ANTONIO R. FERNANDEZ et al., Respondents, *v.* THE GREAT WESTERN INSURANCE COMPANY, Appellant.

THE SAME, Respondents, *v.* THE NEW YORK MUTUAL INSURANCE COMPANY, Appellant.

An insurance for a single premium upon a vessel, at and from the port where she is lying to another, is a continuous and indivisible risk; and a voluntary and unnecessary departure from port, except upon the voyage insured, avoids the policy and discharges the underwriter from all liability under it.

Defendant insured plaintiff's vessel then lying in port at New York undergoing repairs, " at and from New York to Havana." After the repairs were completed, the vessel went on a trip to Elizabethport, N. J. (sixteen miles distant from New York), to test her engines and take in coal. She returned to New York and subsequently sailed for Havana, and while prosecuting her voyage was destroyed by fire.

*Held*, that the voyage to Elizabethport was in violation of the terms and conditions of the policy, and defendant was not liable thereon.

(Argued January 9, 1872; decided May term, 1872.)

APPEALS from judgments of the General Term of the Superior Court of the city of New York, entered upon orders denying motions for new trial and directing judgment upon verdicts in favor of plaintiff.

The actions were brought to recover the amount insured on the propeller J. F. Barnard, afterward called the Morro,

under two several policies issued by the defendants respectively.

The policy of the Great Western Insurance Company was dated on the eighteenth day of March, 1863, and that of the New York Mutual Insurance Company on the next day thereafter. They were severally issued to "A. R. Fernandez & Co., on account of whom it may concern," insuring the said vessel, her tackle, apparel and other furniture, "at and from New York to Havana," among other perils against that by fire to the amount of $7,500 for a premium of $375.

The provisions in the policies material to the decision of the questions disposed of upon these appeals are substantially the same.

It was declared in each of the policies that the adventure upon the said vessel, tackle and apparel was to begin at and from New York, and should so continue and endure until the said vessel should be safely arrived at Havana, and be there moored twenty-four hours in good safety, and among other provisions in each was the following: "And it shall and may be lawful for the said vessel, in her voyage, to proceed and sail to, touch and stay at, any port or places, if thereunto obliged by stress of weather or other unavoidable accidents, without prejudice to this insurance."

In the applications for insurance it was stated that the vessel would sail "in a few days."

It appeared on the trial that at the time the insurances above mentioned were effected, the vessel was lying at the dock at the foot of Corlear's slip, or that vicinity, in the city of New York, fitting for sea, and that repairs and additions then in progress for that purpose were completed by the sixth of April. On that day she went on a trial trip to Elizabethport, in the State of New Jersey, sixteen to twenty miles distant from New York, to test her engines and to take in coal there. Having taken about seventy tons of coal on board, she returned to New York on the next or the second day after she left New York. On her return trip it was discovered that her exhaust or escape pipe was too deeply sub-

merged, and that the coal was of poor quality. After her arrival at New York the coal was discharged, and the difficulty or defect in regard to the pipe was remedied. She was then, on the seventeenth or eighteenth of April, taken in tow of another steamer to Jersey City to take in a new supply of coal. While on her passage there she came in collision with a schooner and sustained considerable damage, which was repaired by the first day of May. Having taken in her coal and provisions, she, on the morning of the next day, sailed for Havana, and on the third day of May, while prosecuting her voyage, she was destroyed by fire.

A motion for a dismissal of the complaints was made on behalf of the respective defendants, when the plaintiffs rested their case, on the grounds, among others, that there was a deviation from the voyage insured, by a delay in sailing on the voyage to Havana till the second of May, and by making the trial trip to Elizabethport in the meantime. The motions were denied and proper exceptions were taken.

At the close of the whole testimony the court, against an exception by the defendants, directed the jury to find a verdict in favor of the plaintiffs for the amount insured, with interest, less the premium note due to the Great Western Insurance Company, with interest.

The above exceptions, and others not necessary to be particularly noticed, were ordered to be heard, in the first instance, at General Term. They were all overruled (BARBOUR, J., dissenting), and a judgment was ordered and entered on the verdict for the plaintiffs.

*Joseph H. Choate* for The Great Western Insurance Company, appellant. The voyage to Elizabethport was a deviation. (3 Kent, 312; Smith's Mer. Law, 3 Am. ed., 459; *Child* v. *S. M. Ins. Co.*, 3 Sand., 26; 1 Philips' Ins., §§ 983, 1,000; 2 Parsons' Mar. Ins., §§ 2, 7, 48; 1 Arnold's Ins., § 354; *Brown* v. *Tayleur*, 4 A. & E., 241; 3 Kent, 307; *Stevens* v. *Com. Ins. Co.*, 26 N. Y., 397; *Day* v. *Orient M. Ins. Co.*, 1 Daley, 13; *Robertson* v. *Col. Ins. Co.*, 8 J., 491.) Necessity

is the only excuse for a·deviation. (*Maryland Ins. Co.* v. *Le Roy*, 7 Cranch., 36; *Robertson* v. *Columbian Ins. Co.*, 8 Johns., 491; 3 Kent's Com., 317; *Coffin* v. *Newburyport Ins. Co.*, 9 Mass., 449; *Beatson* v. *Haworth*, 6 T. R., 531; *Hartly* v. *Buggin*, 3 Dougl., 39; *Augusta Ins. and Banking Co.* v. *Abbott*, 12 Md., 348; *Fox* v. *Black*, 2 Park on Ins., 488; *Townsend* v. *Guyon*, id., 438.) The delay in port for forty-four days was a deviation. (1 Arnold, 383; 1 Parsons' Mar. Law, 281; *Palmer* v. *Marshall*, 8 Bing., 79; *Mount* v. *Larkin*, 8 id., 108; *Palmer* v. *Fanning*, 9 id., 460.)

*R. S. Emmet* for The New York Mutual Insurance Company, appellant. Besides being a breach of express contract, the delay for forty-four days was a deviation that discharged the underwriters. (1 Arnold on Ins., 348, 388; 3 Kent on Con., 5th ed., 315; 1 Parsons' Mar. Law, 281; *Palmer* v. *Marshall*, 8 Bing., 79; *Palmer* v. *Fanniny*, 9 id., 460; *Mount* v. *Larkin*, 8 id., 108; *Coffin* v. *Newburyport Mut. Ins. Co.*, 449; *Augusta Ins. and Bank. Co.* v. *Abbott*, 13 Md., 348.) The voyage to Elizabethport avoided the policy. (1 Arnold on Ins., 364; 1 Parsons' Mar. Law, 281; *Brown* v. *Tayleur*, 4 A. & E., 241; *Coffin* v. *N. Ins. Co.*, 9 Mass., 449; *Beatson* v. *Haworth*, 6 T., 531; *Vos* v. *Robinson*, 9 J. R., 192; *Elliott* v. *Wilson*, 7 Bro. Par. C., 459; *Fox* v. *Black*, Parsons on Ins., 295; *Townsend* v. *Guyon*, id., 295; Evans' Essays, 88, title Deviation.) The deviation cancels the policy, whatever may be its effects and results as regards damages to the vessel. (1 Arnold, 342; *Hartley* v. *Buggin*, 3 Dougl., 39; *Augusta Ins. and Banking Co.* v. *Abbott*, 12 Md., 348; Park on Ins., 294; Evans' Essays, 88.)

*Richard H. Huntley* for the respondent. The remaining in port forty-four days is not a deviation if there was a necessity for the delay. (*Coffin* v. *Newburyport Marine Ins. Co.*, 9 Mass., 436, 449; *Palmer* v. *Marshall*, 8 Bing., 79; *Same Case*, id., 317; *Langhorn* v. *Allnut*, 4 Taunt., 511; *Earl* v.

*Shaw*, 1 Johns. Cases, 313; *Grant* v. *King*, 4 Esp., 175; 2 Parsons' Mar. Law, 283, and cases cited in note 3; 2 Parsons' Mar. Ins., 11, note 2; *Gilfret* v. *Hallet*, 2 Johns. Cas., 296; *Phillips* v. *Irving*, 7 M. & G., 325; *Driscoll* v. *Passmore*, 1 B. & P., 200.) The trial trip to Elizabethport was necessary and did not vitiate the policy. (*Col. Ins. Co.* v. *Catlet*, 12 Wheat., 383; 1 Phil. Ins., §§ 982, 1000; 2 Par. Mar. Law, 278.)

LOTT, Ch. C. Assuming that the policies on the vessel insured continued in force till the sixth day of April after their respective dates, her trial trip to Elizabethport on that day avoided them and discharged the defendants from liability for any subsequent loss. The vessel was insured "*at and from New York to Havana.*" This insurance imposed a liability on the defendants from the time it was effected, and was to continue till the arrival of the vessel at Havana, allowing her to remain a reasonable time at New York, preparatory to sailing for her place of destination. A continuous and indivisible risk was contemplated, and for that, one single premium was fixed and agreed to be paid. There was no division or apportionment of that premium applicable to separate and distinct risks, one having reference to the vessel during her stay at New York, and the other to perils after her departure. The provision in the policies that the adventure upon her was to begin "at and from" New York, and *so continue and endure* until her safe arrival at Havana, and being moored there for twenty-four hours in good safety, clearly defines when the liability was to commence, and shows that it should be continuous from that time until the period fixed for its termination.

A departure from New York, except on the voyage to Havana, is inconsistent with that provision and the continuity of risk contemplated by it, and the subsequent clause providing that it should and might be lawful for the said vessel, on her voyage, to proceed and sail to, touch and stay at any port or places, if thereunto obliged by stress of weather

or other unavoidable accidents, without prejudice to the insurance, declares, by necessary implication, that a deviation for any other cause would be unauthorized, and, consequently, could not be made without impairing the claims of the assured. Elizabethport was not a part of or within the port or harbor of New York, but is in the State of New Jersey, distant sixteen to twenty miles from New York, and not in the ordinary course of a voyage to Havana, and no necessity is shown for proceeding to that place, either for making a trial trip or taking in coal. That voyage must, in the absence of any proof to warrant it, be considered as voluntarily made, and in violation of the terms and conditions upon which the liability of the defendants was assumed. It was entirely distinct from and unconnected with the voyage insured. Although the vessel returned to New York and afterward sailed for Havana, that was not the voyage in the contemplation of the parties or intended to be insured, when the insurance was effected. They acted and made their contract, having reference to the facts and circumstances existing at that time. The vessel was then nearly ready for sea. It was expected that she would sail in a few days, and that on leaving New York she would proceed direct on her voyage to Havana. There is not the least foundation or any plausible color to justify the conclusion or an inference that either party, when referring to the adventure " at and from New York," described in the policies, had reference to or could have meant one that should begin after the vessel had sailed therefrom and again returned thereto, subsequent to a voyage to another place or port; or, in other words, that it should begin after an independent and intermediate voyage had been made and entirely completed. It is also clear that when the vessel was at Elizabethport she was neither at New York nor on a voyage therefrom to Havana, and consequently the policies had at that time ceased to protect her, and nothing that subsequently occurred could restore the obligation of the underwriters and again renew their liability, without their consent. It follows, from the preceding considerations, that there was

such a deviation from the voyage insured as to discharge the defendants from their liability under the policies. Their motions for the dismissal of the complaints should therefore have been granted and the judgments were erroneously ordered against them.

It is, however, proper to refer to the opinion of the majority of the court below on ordering judgment for the plaintiffs. MONELL, J., by whom it was given, says: "Although the underwriters are discharged if the loss occurs upon a policy 'at and from' a port of departure while the vessel is away from such port for any unexcused purpose," yet they will not be absolved if the vessel returns in safety and is afterward lost upon her voyage; and one reason is that the policy covers two risks, one at the port of departure and the other from such port upon the voyage to the port of destination. These risks are wholly independent and distinct from each other. The former insures against the enumerated perils while the vessel lies in port, and if she is taken from such port for any unjustifiable purpose and is lost while absent from such port the obligation of the insurers is at an end. The latter risk is limited to the voyage and takes effect upon the departure of the vessel. If at that time no loss has occurred, the contract continues binding."

That construction cannot be sustained. No case or authority is cited to support it, and the court concedes that it is opposed to and adverse to the decision in *Brown* v. *Tayleur* (4 Add, & El., 241; 31 Eng. C. L. R., 60.)

In that case the insurance was on a ship "at and from her port of lading in North America to Liverpool." After she had taken a part of her cargo on board at one port, she sailed to another in the same bay of the sea described by different witnesses as five and seven miles distant, but not in the line of voyage to Liverpool to complete her loading. After remaining there three weeks and taking in additional cargo she returned to the port which she had left to receive provisions, water and wood and to be got ready for sea. Nine

days afterward she sailed therefrom for Liverpool and was lost on the voyage.

It was held (Lord DENHAM, C. J. and PATTERSON, WILLIAMS and COLERIDGE, JJ., *seriatim*, giving opinions) that the port where she commenced loading was her port of lading, within the meaning of the policy, and that her departure therefrom to another port, as above stated, was a deviation and avoided the policy.

The same principle was decided by the Supreme Court of this State, in *Vos* v. *Robinson* (9 Johns. R., 192). In that case the voyage insured was " at and from Port Plata, St. Domingo, to New York," and the vessel covered by the policy was shipwrecked and lost in going from Port Plata to Susua. She had a permit from the government at Port Plata to go to Susua for the loading of mahogany, and would have been obliged to return to Port Plata for her clearance. Susua was included within the revenue district of Port Plata, and about four leagues east therefrom. It was held that Port Plata proper was the port of departure, and that there was a *deviation* from the voyage insured. It will be seen that the vessel had not cleared for New York, and consequently was not in the course of her voyage there at the time of her loss, but that she had to return to Port Plata, her port of departure. The result of the decision, therefore, is, that the policy ceased to be binding and effectual after the vessel left that port, although for a temporary object and purpose only, and with the intention, on the part of her master, to return thereto; and it affirms the proposition above stated by me, that the vessel insured, under the policies in question, was not protected or covered by them when she was at Elizabethport. (See, also, 1 Phil. Ins., § 1000; 2 Parsons Ins., 7, 46–52.)

Without further citation of authorities, a perfect answer to the position that the policy covered two risks, independent and distinct from each other, exists in the fact that there is but one *single and entire* premium. What portion of this was applicable to the risk on the vessel while in port, and what portion on that during her voyage? It is impossible to

say. It may also be asked if there were two risks, how much was the amount insured on each risk? Certainly not the whole sum of $7,500 specified in the policies, and there is no means of determining the proportion; and if for any cause the plaintiffs should have become entitled to a return of a portion of the premium on either risk, how much would have been returnable?

I forbear to pursue these inquiries or the further consideration of the question. If it be conceded that there were separate, distinct and independent risks, the fact does not benefit the plaintiffs. It would then follow as a practical result that there are, in effect, two policies, one on the vessel while in port " at New York," and the other on her voyage "from New York." The latter, under the facts disclosed in the case, never attached. The voyage to Elizabethport clearly is a bar fatal to a recovery. That was a new, distinct, different and intermediate voyage, not in contemplation of the parties at the time their contract was made, and it operated as an abandonment of the voyage insured. (See 3 Kent, 5th ed., 317; Parsons' Mercantile Law, p. 457.)

Having reached the conclusion that the judgments appealed from are erroneous, on a ground common to both cases, I do not deem it necessary to consider the effect of the bill of sale from the plaintiffs to Kain, nor any of the other questions raised on the trial.

The judgments must be reversed and a new trial ordered on the ground stated, costs to abide the event.

HUNT, C. The application for insurance of the vessel, signed by the plaintiffs' agent, contained a warranty that the vessel was in " perfect order," and also that she would "sail in a few days." On the trial, no attention was called to the first branch of this objection. When the plaintiffs' case was closed, the defendants moved for the dismissal of the complaint upon four different grounds specifically stated. Neither of them contained any reference to this objection, nor was there any allusion to it, when the case was finally closed, at

the circuit. Evidence was given to show that the underwriter was informed that the vessel was undergoing extensive repairs, and was being thoroughly remodeled, and that the inspectors employed by the underwriter visited her and made their reports upon her condition. This was expressly denied, on the other hand. It is quite likely that there was a fair question, under this point, to be submitted to the jury, if such submission had been requested. No such request was made, and under the evidence as it stands, and without attention to the point on the trial, we are not justified in saying that there was a breach of this warranty as to the condition of the vessel.

The alleged breach in the other respect, to wit: that she should " sail in a few days," formed one of the grounds of the motion to nonsuit, but there was no request that the jury should receive any instructions in relation to it. The insurance covers the vessel while in port preparing for her voyage. The rule is, that such delay must be for a reasonable time only. As it is expressed in another form, the departure must be in a reasonable time. Were there no excusing facts in the case, a delay of forty-five days in the clearing of a ship, whose intended voyage would occupy only five or six days, would, appear to be unreasonable. Here again the conflict of testimony is important to be considered. If the vessel was in perfect order ready for sailing, but a few days, literally, would be required to load and start her, or should be allowed for that purpose. If, on the other hand, the vessel was in good order for river navigation, but was being remodeled and substantially rebuilt to fit her for an ocean steamer, several weeks might well be exhausted in that duty. Again, this vessel, while under repairs, met with various disasters and calamities, which delayed her completion. I cannot discover such a state of facts as, upon the principles of law laid down by the appellants, would justify the court in saying that, as a matter of law, and necessarily, there was a breach of the warranty that the vessel should sail in a few days. The jury might have so found, but the question was not submitted to them, and

neither party asked that it should be. (1 Arnold, 383; 1 Par. Mar. Law, 281.)

The principal point in the case is that arising upon the alleged deviation in visiting the port of Elizabeth, New Jersey, a distance of sixteen to twenty miles, for a trial trip and to procure coal. This occurred on the sixth of April. The port of Elizabeth was not on the route to Havana, and was reached by going down the New York bay, either outside or inside of Staten Island, but in each case inside of Sandy Hook. She returned from Elizabeth to New York within a day or two. When loaded at Elizabeth with seventy tons of coal, it was found that her exhaust pipe was submerged and needed to be altered. The coal was found to be unsuitable and was removed and other coal substituted. Coal could readily be obtained at different places in the port of New York. The defendants offered to prove that, by the custom of New York, trial trips are the subjects of separate insurance and separate premiums, also the usual insurance premium on a voyage to Elizabeth, both of which offers were excluded by the court. The court directed a verdict for the plaintiffs for the amount of the loss.

The law is firmly settled that a deviation from the voyage limited in the policy, unless compelled by necesssity, avoids the policy. It matters not how short may be the deviation, nor how harmless, nor, indeed, does it aid that it should be shown that the alteration made a shorter and a safer voyage, and thus was of positive advantage to the underwriters. The contract is to insure upon a voyage between the points named, in the regular and customary track. The moment the vessel voluntarily and without necessity departs from the due course of the voyage, the contract is at an end, and the underwriter is freed from responsibility. (3 Kent Com., 312; Smith's Mer. Law, 3d Am. ed., 459; 1 Arnould Ins., 354; *Stevens* v. *Com. Ins. Co.,* 26 N. Y., 402.)

*Brown* v. *Tayleur* (4 Ad. & Ells, 241) is in point. The Penrith was insured "at and from her port of loading

in North America to Liverpool." The vessel took in a part of a cargo of timber at Cocagne, New Brunswick, in July. In August she sailed to Buktouche, five to seven miles distant, to complete her cargo. Buktouche and Cocagne are situated on different creeks of the same bay. The vessel returned to Cocagne on the 22d of August to get wood, water and provisions. She took on no additional cargo there, unless a few sticks of timber, which was doubtful. She sailed for England on the 31st of August, and was lost on the voyage. Neither of these ports had a custom-house, though there were officers of customs at both places, and both were within the jurisdiction of the custom-house of St. John, N. B. (31 E. C. L. R., 121.)

It was held by the Court of King's Bench, Ch. J. DENMAN presiding, that there was a deviation and the policy was avoided. Justice PATTERSON says: " When she began to take on her cargo at Cocagne, that was her place of loading, and her removal afterward to Buktouche was a deviation." Justice COLERIDGE says: " It makes a difference whether a ship stays at one place to load, or goes on a roving voyage to pick up a cargo."

*Vos & Lightbourne* v. *Robinson* (9 J. R., 191) is an earlier case in our courts, where the same point was adjudged, and in the same manner. *Elliot* v. *Welmer* (7 B. Par. Cas., 459); *Kettell* v. *Wiggins* (13 Mass. R., 68), are decisions to the same effect, on facts of quite a similar character.

I find but a single authority which seems to conflict with these general views. In Parsons on Mar. Law (vol. 2, p. 278, § 2), the writer says: " It is perfectly well settled that any deviation whatever discharges the insurers from all further responsibility, leaving them, however, liable for a loss occurring before the deviation, and caused by a peril insured against; nor are they discharged if the change of risk is merely temporary, and when it ceases, all subsequent risks are precisely and certainly the same as they would have been had no deviation taken place. In this case the effect of the deviation is only to suspend the responsibility of the insurers and

discharge them from any liability for a loss which occurs during the existence of the deviation. But it is obvious that there are few changes of risks that can be said to leave all the subsequent perils in precisely the same condition as if there had been no change, and this exception, therefore, is seldom applicable." The answer to this authority, as applicable to the present case, is apparent. The rule thus laid down by Parsons is true as to a time policy under certain contingencies, but never as to a voyage policy. The illustration given by the learned writer on this rule is of that character. Thus, he says, if a steamboat makes regular trips between two ports, is insured for one year, and if, after the trip for the day is ended, she should tow a vessel, or do any similar act, the underwriters would clearly be liable if she were subsequently lost on a regular trip or while lying in port, but not if she were lost while engaged in towing. This may be. If so, it would be upon the principle that the time policy operates as a new and separate insurance upon every trip made between the ports designated. Every time she starts from the port of departure a new insurance comes into existence, and it might well be said that the offences committed upon a former voyage, and under a former policy, could not affect the last voyage. (See *Day* v. *Orient*, 1 Daley's R., 13; *Robertson* v. *Columbian M. Ins. Co.*, 8 J. R., 491.)

The qualification imposed by the learned author, " that all subsequent risks shall be certainly and precisely the same as if no deviation had taken place," destroys the rule. No such certainty can exist. If the vessel is delayed an hour, or hastened an hour, it is obvious that she may incur perils which that change of time created or increased. It is impossible to say, with certainty, that every circumstance of time, place, weather, enemies, condition of the captain or crew or vessel, occurring after a change, would have been the same had there been no change. The vessel we are looking after spent three days in going to Elizabeth and returning. The coal there loaded was taken out and other coal put in. How many hours, alteration in the time of her final departure

this made, who can tell? Who can tell whether she received a strain not perceptible, a secret injury, some damage to the coal bins, which was connected with her subsequent destruction by fire? These are speculations. They may be well founded. They may be entirely without foundation. They serve to illustrate the danger of departing from the well settled rule of law. I repeat it, as well expressed by Justice SEDGWICK, in *Coffin* v. *Newburyport Mar. Ins. Co.* (9 Mass. R., 436): " It is undoubtedly true that the shortness of the time, or the distance of the deviation, makes no difference as to its effect in the contract; whether for one hour or one month, or for one mile or one hundred miles, the consequence is the same. If it be voluntary and without necessity, it puts an end to the contract."

. The plaintiffs seek to obviate the difficulty by the argument that the voyage to Elizabeth was a trial trip, and that such experiment was necessary before the vessel could safely proceed on her voyage to Havana. All the cases show that necessity excuses a deviation; such as stress of weather, compulsion of a superior power, or a change for the relief of a vessel in distress. But it must be necessity. Thus in *Phelps* v. *Auldjo* (2 Camp., 350), where the master of a vessel went out of a harbor by order of the captain of a frigate lying near, to examine a strange sail, Lord ELLENBOROUGH ruled it to be a deviation, remarking that if he had gone by compulsion, or under threat, or just fear of violence, it would not have been so. No necessity is shown for the vessel in this case to go out of the limits of the port of New York. Apparently she could have been tested as well by going down the bay to Staten Island as by going to Elizabeth. She did not go out into the broad ocean, as it appears that her voyage was inside the Hook. The opportunity to test her fitness for the sea could have been perfectly attained without going to another port, in another State, at a distance of eighteen or twenty miles. On this point, as well as the supplying her with coal, there is not the slightest evidence of a necessity for leaving the port of New York. The contract bound her to remain in the port

of New York, " at New York," until she should take her departure " from New York to Havana." (See authorities *supra.*) This contract was violated by the deviation to Elizabeth, without compulsion or necessity, and the responsibility of the underwriter thereupon ceased.

Judgment should be reversed and a new trial ordered, costs to abide the event.

All concur.

Judgment reversed.