EDWARD V. THEBAUD et al., Respondents, *v.* THE GREAT WESTERN INSURANCE COMPANY, Appellant.

1. MARINE INSURANCE — DEVIATION FROM VOYAGE — PRELIMINARY TRIPS. Trial trips up and down a river, made by a new vessel preliminary to an ocean voyage in order to test its capacity therefor, do not constitute a deviation within the meaning of an insurance policy covering the voyage.

2. SEAWORTHINESS OF INSURED VESSEL — QUESTION FOR JURY. A steamer built for use on rivers or other inland waters and not seaworthy in the sense in which that word is applied to seagoing vessels is properly found by the jury to answer the implied warranty of seaworthiness under a policy of marine insurance covering a voyage from Philadelphia, where it was built, to Frontera, Mexico, where it was intended for use, when the insurer was possessed of all information concerning the character and construction of the craft and exacted double the usual premium for marine insurance on ordinary seagoing vessels.

3. QUESTION FOR JURY AS TO DEVIATION OF VESSEL. The deviation of a non-seagoing vessel insured for a voyage from Philadelphia to Frontera, Mexico, is a question for the jury where it takes the inside course, through canals and bays, from Philadelphia to Fort Macon, stops at Baltimore for repairs in consequence of a collision with a submerged stump in a canal, and stops at Norfolk to procure a pilot, and thence proceeds to Fort Macon and the open sea.

4. KNOWN FACTS INCONSISTENT WITH IMPLIED WARRANTY OF SEAWORTHINESS. The rule that an insurance company may not avoid liability on the ground that facts, of which it had full knowledge at the time of issuing the policy, were then not in accordance with the formal words of the contract or some of its conditions, is applicable to the implied warranty of seaworthiness in policies of marine insurance.

5. KNOWN RISK TAKEN BY INSURER FOR DOUBLE PREMIUM. Alleged defects of construction in a vessel insured for a sea voyage, which were known to the insurer at the time of taking the risk, on account of which a double premium was charged, cannot be set up to defeat a recovery in case of loss on the ground that they made the ship unseaworthy.

*Thebaud* v. *Great Western Ins. Co.*, 84 Hun, 1, affirmed.

· (Argued March 24, 1898; decided April 19, 1898.)

APPEAL from a judgment of the late General Term of the Supreme Court in the first judicial department, entered February 20, 1895, upon an order overruling defendant's exceptions, ordered to be heard in the first instance at General Term, and directing judgment upon a verdict in favor of plaintiff.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*Prescott Hall Butler* for appellant. The *Dos Hermanos*
was unseaworthy. There was no evidence of her seaworthi-
ness to go to the jury, and the court erred in submitting that
question to them and in refusing to dismiss the complaint or
to direct a verdict for the defendant on that ground. (1 Phil-
lips on Ins. [5th ed.] § 695; *C. M. Co.* v. *N. M. Co.*, 5 L. T.
[N. S.] 504; *Burges* v. *Wickham*, 3 B. & S. 669; *Warren* v.
*U. S. Ins. Co.*, 2 Johns. Cas. 231; *Audenreid* v. *M. M. Ins.
Co.*, 60 N. Y. 482; *Q. M. Ins. Co.* v. *Comcl. Bank*, 3 P. C.
App. 234; *Douglass* v. *Scougall*, 4 Dow. P. C. 269; *Rogers*
v. *S. M. Ins. Co.*, 14 J. & S. 65.) The *Dos Hermanos* devi-
ated, and so the policy in suit was avoided. (*Fernandez* v.
*G. W. Ins. Co.*, 48 N. Y. 571; *Snyder* v. *A. M. Ins. Co.*, 95
N. Y. 196; *Audenreid* v. *M. M. Ins. Co.*, 60 N. Y. 482.)
The *Dos Hermanos* encountered no sea perils within the
meaning of the policy, and was not lost by or through any
such perils, but through her own inherent incapacity and
unseaworthiness. (*The Gulnare*, 42 Fed. Rep. 361; *The
Millie R. Bohannon*, 64 Fed. Rep. 883.)

*Esek Cowen* and *Everett Masten* for respondents. The
evidence as to the seaworthiness of the vessel was sufficient to
require the submission of the question to the jury, and their
finding in the affirmative should not be disturbed. (*Burges*
v. *Wickham*, 3 B. & S. 669; *Thebaud* v. *P. Ins. Co.*, 52 Hun,
495; *Clapham* v. *Langston*, 5 B. & S. 729; *Bouillon* v.
*Lupton*, 15 C. B. [N. S.] 113; *Bidwell* v. *N. W. Ins. Co.*,
24 N. Y. 302; *Van Schoick* v. *N. F. Ins. Co.*, 68 N. Y. 434;
*Bennett* v. *Buchan*, 76 N. Y. 386; 1 Phillips on Ins. [5th
ed.] §§ 712, 713.) The trial trips did not constitute devia-
tion. (1 Arnold on Ins. [2d ed.] §§ 151, 152; *Foster* v. *J.
M. Ins. Co.*, 1 Edm. 290; *Snyder* v. *A. M. Ins. Co.*, 95 N.
Y. 196; *Fernandez* v. *N. W. Ins. Co.*, 48 N. Y. 571; *Arnold*
v. *P. M. Ins. Co.*, 78 N. Y. 7; *Smith* v. *Surridge*, 4 Esp.

25; *Bain* v. *Case*, 3 C. & P. 496; *Langhorn* v. *Allmett*, 4
Taunt. 511; *White* v. *Ashton*, 51 N. Y. 280; *Graham* v. *C.
Ins. Co.*, 11 Johns. 352.) The objections to asking Captain
Stuart for an opinion as to whether the *Dos Hermanos* was a
good vessel of her type were not well taken. (1 Smith's L.
C. 286, note; 3 Kent Com. 284; *McLenahan* v. *U. Ins. Co.*,
1 Pet. 188; *Nelson* v. *S. M. Ins. Co.*, 71 N. Y. 453; *Burges*
v. *Wickham*, 3 B. & S. 694; *Bouillon* v. *Lupton*, 15 C. B.
[N. S.] 113; *Turnbull* v. *Jansen*, 36 L. T. R. 635; *Mathews*
v. *H. Ins. Co.*, 11 N. Y. 9; 1 Phillips on Ins. § 1099.) The
rulings of the trial court should be sustained and judgment
for the plaintiffs directed. (*McMaster* v. *Ins. Co. of N. A.*,
55 N. Y. 232.)

O'BRIEN, J. This was an action by the owners of a steam-
boat upon a policy of marine insurance. The issues in the
case were tried before a jury, and the plaintiff recovered.

On the 28th of June, 1884, the steamer *Dos Hermanos*
was in process of construction at the port of Philadelphia for
use as a river steamer at or near Frontera, Mexico. She was
not constructed or intended for use upon the open sea, but for
service upon the rivers or other inland waters of the country
where she was destined for use. On the day mentioned, the
defendant issued to the plaintiff its policy of marine insurance
upon this steamer to cover the voyage from Philadelphia, the
place where it was built, to Frontera, Mexico, the place where
it was intended for use. The policy related only to this voy-
age, part of which was, as all parties knew, upon the open
sea. The defendant, by the terms of the policy, undertook to
pay to the plaintiffs the sum of $5,000 in case of loss upon
this voyage, including what is known as the mechanic's risk
while in port, meaning that at the time of the execution of
the contract the steamer had not been completed, and, in fact,
the voyage did not commence until the 27th of August there-
after. The policy, by its terms, indemnified the owners
against loss from the usual perils of the sea covered by poli-
cies of marine insurance. The steamer, while on the voyage,

was lost at sea, near the coast of North Carolina, on the night of the 13th of September, 1884.

The defense to the action may be arranged under three general heads: (1) That the steamer was not seaworthy, and, hence, that the implied warranty of seaworthiness, which it is insisted enters into and forms a part of every marine insurance upon a ship or vessel, was broken, and for that reason the plaintiff is not entitled to recover. (2) That in making the voyage there was a voluntary deviation from the usual course of the voyage from Philadelphia to Frontera. (3) That the steamer was not lost by the perils of the sea, or by any casualty covered by the terms of the policy, but in consequence of the unseaworthiness and unfitness of the vessel to make the voyage covered by the contract.

It is no doubt the general rule that in all contracts of marine insurance upon vessels there is an implied warranty that the subject of the insurance was at the time seaworthy, or, in other words, reasonably fit and capable of making the voyage. But in this case both parties knew that the vessel was not intended for service upon the open sea. She was not built or constructed for any such purpose, but, on the contrary, for the river service. Before the defendant entered into the contract the plans and specifications with reference to the construction of the *Dos Hermanos* had been submitted to its agents. They put the defendant in possession of all information concerning the character and construction of the craft. The defendant's marine engineer, who had had considerable experience, assured the broker who took the risk "that she was built for the river trade, and he did not consider that she was just the thing to attempt all weathers on the coast going around there, but if properly handled she might get there, provided she took the inland course so far as possible." The defendant thereupon concluded to write the risk, but exacted therefor double the usual premium for marine insurance on ordinary seagoing vessels. The steamer was not then completed, and, hence, the provision in the policy covering the mechanic's risk while in port, including the privilege of mechanics to work upon the

vessel. Before starting on her voyage for Frontera two trial trips were taken by direction of the engineer, one up and one down the Delaware river. Neither of these trips, however, extended beyond the limits of the port of Philadelphia, and we do not understand that it is seriously claimed that these trips constituted a deviation from the usual voyage. They were merely preliminary in order to test the capacity of the vessel to make the voyage.

It was competent for the jury to find upon the evidence that the vessel was sufficiently provided with a crew and proper equipments. There is evidence tending to show that suitable precautions were taken before leaving Philadelphia for the ocean voyage to make her as seaworthy as a vessel of her class could be made; that her machinery was tried and the boilers inspected in the usual manner. The voyage was commenced, after leaving Philadelphia, by taking what is known as the inside course through the canals and bays, and the sea voyage was not actually commenced until she reached Fort Macon. Before reaching that point, however, it seems that an accident occurred to the vessel by a collision with a submerged stump in one of the canals, and, hence, there was a stop at Baltimore for repairs, where some further precautions were taken in order to protect the steamer from the perils of the sea voyage. Another stop was made at Norfolk, in order to procure a pilot to take her through the Chesapeake and Albemarle canal and other waters to Fort Macon. This was all inside navigation, and on reaching the point last mentioned it became necessary to go outside upon the open sea, and shortly afterwards the steamer was lost.

That the *Dos Hermanos* was not a seaworthy vessel, in the sense in which these terms are applied to seagoing vessels, is made quite clear by the evidence. It was undoubtedly competent for the jury to so find and for the court below to so decide, but in this court the question always is, upon an issue of this character, not upon which side the evidence preponderates, but whether there is any evidence to support the verdict. The parties knew perfectly well that

the subject of the insurance was not a seagoing vessel, but, for the purposes of the trip the defendant was evidently willing to take the risk, in consideration of the payment of a double premium, and after inspecting the vessel and acquiring full knowledge as to her construction and capacity. In view of the proof in the case tending to show what was done in order to fit the steamer for her voyage, we do not think it can be said in this court that the verdict of the jury is without any evidence to sustain it. Generally, the question as to whether a vessel, covered by a policy of marine insurance, was, or was not, at the time seaworthy, is one of fact for the jury. (*Burges* v. *Wickham*, 3 Best & Smith, 669; *Clapham* v. *Langton*, 5 Best & Smith, 729; *Turnbull* v. *Janson*, 36 L. T. R. 635; *Bouillon* v. *Lupton*, 15 C. B. [N. S.] 113.) It is difficult to see how such a question, from its very nature, can, in practice, be determined otherwise, except, possibly, in a very clear case. But we do not regard that question as controlling, since, as already stated, both parties to the contract knew that the vessel was not a seagoing craft, or suitable for the navigation of the high seas, and, under the circumstances, the implied warranty upon which the defendant relies should not be construed in such a way as to be repugnant to the general purpose which the parties had in view at the time of the execution of the contract. We can discover no reason why the general rule applicable to risks in fire insurance policies does not apply to this case. As was said by this court in the case of *Bidwell* v. *North Western Ins. Co.* (24 N. Y. 302): "Indeed it is not easy to perceive why an insurance company, by reason of the formal words or clauses (of a general and comprehensive nature), inserted in a policy intended to meet broad classes of contingencies, should ever be allowed to avoid liability on the ground that facts, of which the company had full knowledge at the time of issuing the policy, were then not in accordance with the formal words of the contract, or some of its multifarious conditions. If such facts are to be held a breach of such a clause, they are a breach *eo instanti* of the making of the contract, and are so known to be by the com-

66

pany as well as the insured. And to allow the company to-
take the premium without taking the risk would be to encour-
age a fraud." This rule, which is clearly applicable to,
express warranties in contracts of insurance, should, in reason
and justice, be applicable to the implied warranty of seaworthi-
ness in policies of marine insurance. That such is the well-
settled rule in this court, with reference to express warranties
in contracts of fire insurance, covering conditions with respect.
to which the underwriter had full knowledge, cannot now be
questioned. (*Van Schoick* v. *Niagara Ins. Co.*, 68 N. Y. 434;
*Bennett* v. *Buchan*, 76 N. Y. 386; *McNally* v. *P. Ins. Co.*,
137 N. Y. 389; *Forward* v. *C. Ins. Co.*, 142 N. Y. 382;
*Robbins* v. *Springfield Ins. Co.*, 149 N. Y. 477.)

So we think the defendant must fail in defeating the
recovery on the ground that there was a breach of the implied
warranty of seaworthiness.

Whether the vessel was unseaworthy or not by reason of
insufficient crew, or insufficient machinery, or the absence of
a pilot during certain parts of the voyage was, under the
circumstances, a question for the jury. The master of the
vessel was himself a competent navigator, and whether, after
reaching Fort Macon and going into the open sea a pilot was
usual and necessary for the rest of the voyage, is not a matter of
law, but of fact, and the burden of proof showing negligence
on the part of the plaintiff in this respect was, we think, upon
the defendant. (1 Phil. on Ins. [5th ed.] §§ 712, 713.)

Nor do we think it can be said, as matter of law, that there
was such a deviation from the usual course of the voyage as
to absolve the defendant from the obligations of the contract.
A deviation is a voluntary and inexcusable departure from the
usual course, and whether the departure amounts to a devia-
tion must be determined by the motive, consequences and
circumstances of the act. Hence, in its nature it is a question
of fact. Where the circumstances are such as to leave no
alternative to a reasonable and prudent man, exercising a sound
judgment, and acting for the best interests of all concerned,
it is not a deviation. (1 Arnold on Ins. §§ 151, 152.) This

proposition covers the argument in behalf of the defendant with respect to the inside voyage through canals and the stops made at the various points already referred to. We have already intimated that the trial trips cannot, in any just sense, be considered a deviation. Moreover, where a vessel is insured for a voyage "at and from" a port a reasonable time will be allowed while there engaged in the business of preparing for her voyage. (*Snyder* v. *Atlantic Mut. Ins. Co.*, 95 N. Y. 196; *Fernandez* v. *Great Western Ins. Co.*, 48 N. Y. 571.)

The subject of the insurance in this case was a new craft, and the trial trips were reasonably necessary in order to determine, before undertaking the voyage, whether the vessel was suitable for that purpose. Hence these trips may reasonably be regarded as a part of the preparation for the voyage.

The delay in commencing the voyage may also be imputed to the same cause, viz., the preparation necessary previous to sailing. The vessel was not completed when insured. The underwriter is not discharged by a delay incurred for the purposes of the voyage, though its absolute duration be very considerable. There must be a clear imputation of waste of time, and whether the delay be reasonable or not must be determined, not by any positive or arbitrary rule, but by the circumstances existing at the time. (*Arnold* v. *Pacific Mut. Ins. Co.*, 78 N. Y. 16, 17.) The defendant knew the condition of the vessel, and could form a judgment for itself as to the time when she would be ready to sail, and the insurance covered the chances of delay. On all the facts the jury had the right to find that the delay was not unreasonable.

The subject of the insurance was a non-seagoing vessel. It is reasonable to suppose that the parties intended that in making the voyage the open sea should be avoided as much as possible; hence, what was called the inside course was taken. Considering the character of the steamer and the purpose for which she was built, it cannot be said, as matter of law, that avoiding the sea until Fort Macon was reached, by the inside course, was a deviation from the usual course for vessels of that character. The ruling of the trial court submitting the question to the jury was quite as favorable to the defendant

as it was entitled to. It was for the jury to say whether, under all the circumstances, the delay in the canal at night, the stop at Baltimore and Norfolk, the delay at Fort Macon and the anchoring off Smithville was a deviation.

The defense that the loss was not from the perils of the sea, but through inherent weakness, or defects, or faulty construction, presented upon the proofs a question of fact. On the part of the defendant it was claimed that the steamer foundered in a calm sea; while the plaintiffs insisted that she was lost in a northeast gale. The jury having sustained the plaintiffs' contention, we cannot say that the verdict in that respect is unsupported by evidence. The question was for the jury, and the finding is not open for review here. It appears from the evidence that this vessel was ninety feet long, twenty-two feet beam, with from twelve to eighteen inches of freeboard, flat bottom, drawing about three feet of water. It is obvious that it would not require the severest tempest to sink such a craft. The risk was doubtless an unusual one, and for that reason an unusual premium was asked and obtained. It may be that the regular seagoing vessel would have weathered the gale. But the real question presented to the defendant, when the application for insurance was made, was whether this boat, as she was known by both parties to be, could make the transit from the port of departure to her destination. The defendant concluded to take that risk in consideration of a double premium, and to permit it now, after receiving the premium, to defeat a recovery, on the ground that she was not seaworthy in consequence of alleged defects of construction, known to it at the time of taking the risk, would scarcely be consistent with commercial morality.

It seems to us that the question was properly submitted to the jury, and upon a careful examination of the exceptions taken during the trial, and to the charge, we are of opinion that none of them present any question of law that would warrant us in disturbing the verdict.

The judgment should, therefore, be affirmed.

All concur, except Parker, Ch. J., not sitting.

Judgment affirmed.