FARMERS' FEED CO. v. INSURANCE CO. OF NORTH AMERICA.

(Circuit Court of Appeals, Second Circuit. December 15, 1908.)

No. 101.

INSURANCE (§ 377*) — MARINE INSURANCE—ACTION—DEFENSES—UNSEAWORTHINESS.

Where defendant, knowing the age and exact condition of a barge, insured her for operation in waters adjacent to New York at a high premium, it could not claim as a defense to a loss of the barge by rough water encountered near Brooklyn Bridge, occasioned by wind and tide, that the barge was unseaworthy within the requirements of the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 979; Dec. Dig. § 377.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the District Court of the United States for the Southern District of New York.

On appeal by respondent from a decree in favor of the libelant for $4,658.30 in an action upon a policy of marine insurance. The facts are set out, in extenso, in the opinion of the District Judge which is reported in 162 Fed. 379.

Kneeland & Harison, for appellant.

Wing, Putnam & Burlingham, for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

COXE, Circuit Judge. The action was brought to recover the loss on a cargo of brewers' grain while being carried on the libelant's barge, Lydia L. Mackey, from Newton Creek to Pier 14, North river, September 11, 1906. The cargo was insured by the respondent by a time policy for one year from April 30, 1906. The amount of insurance was $4,500 and the premium was $157.50, being at the rate of $3\frac{1}{2}$ per cent. The ordinary rate was from 2 to $2\frac{1}{2}$ per cent. On the day of the loss the Mackey was being towed by the tug Vigilant on a hawser. An empty coal barge was made fast to the Mackey on her starboard side. When in the vicinity of Brooklyn Bridge it was noticed that the Mackey had a list to starboard with several inches of water in her hold. Her master started the pump but could not control the water. On arriving at her destination she was tied up to the bulkhead. She then had 14 or 15 inches of water in her and continued to fill until she sank. Her cargo became a total loss.

It is not pretended that any fraud or misrepresentation was practiced upon the insurance company in order to secure the policy. The Mackey was undoubtedly very old and somewhat decayed, but her condition, her history and all the facts regarding her were fully known to the company at the time the policy was executed, a written record stating all the particulars being on file with the company. The underwriters knew that she was not a desirable risk, they knew that they were taking more than the ordinary hazard and they guarded themselves against it by charging more than the ordinary premium. The theater of the Mackey's operations were, by the express terms of the policy, confined to the waters adjacent to New York, practically New York Harbor. The ordinary perils of the sea were not intended, but only such perils as were to be encountered in the comparatively quiet waters referred to. The question of seaworthiness must be considered in the light of the service required.

The precise cause of the sinking is problematical. If there were a patch on the starboard side, which is doubtful, and if this patch were removed by the friction between the two boats, which is not satisfactorily shown, and if the removal of the patch left a hole exposed, it is still difficult to understand how sufficient water to cause a list to starboard could have been received through an aperture 18 inches above the water line. No one says the hole in question was below the water line and it is plain that if it were on the port side, as indicated by some of the testimony, water entering there would not cause a list to starboard. It is unnecessary to attempt to reconcile the testimony on this

point as the accident was undoubtedly produced by rough water encountered near the Brooklyn Bridge occasioned by the wind and tide being against each other, causing the light coal barge to pound heavily against the Mackey.

We concur with the District Judge in thinking that when the respondent "knowingly took the risk, at a high premium, it should be held to its bargain and not be permitted to resort to the terms of the policy to overcome the claim." The facts bring the case within the rule of Thebaud v. Great Western Ins. Co., 155 N. Y. 516, 50 N. E. 284, and cases cited.

The decree is affirmed with interest and costs.