## FIREMAN'S FUND INS. CO. v. COMPANIA DE NAVEGACION, INTERIOR, S. A.*

Circuit Court of Appeals, Fifth Circuit.
May 20, 1927.

No. 4926.

**1. Insurance ☞403—Loss of tug in tow because of choppy sea caused by ordinary wind held not caused by "peril of the sea."**

Loss of steam tug in tow because of choppy sea, caused by wind never exceeding 25 miles an hour in velocity, *held* not caused by "peril of the sea," within marine insurance policy; such conditions being ordinary, usual, and natural.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Perils of the Sea.]

**2. Insurance ☞273—Owner impliedly warrants vessel's seaworthiness.**

Owner of vessel impliedly warrants its seaworthiness.

**3. Insurance ☞415—Vessel of any size or type, unable to withstand ordinary perils of sea voyage, is "unseaworthy."**

Any vessel unable to withstand perils of ordinary voyage at sea is "unseaworthy," within policy excepting claims arising from unseaworthiness, whatever its size or type.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Unseaworthy.]

**4. Insurance ☞372, 388(1)—Insurer, making examination and survey, waives implied warranty of vessel's seaworthiness, but may defend suit on policy on ground that loss was caused by unseaworthiness.**

Insurer, making its own examination and survey before issuing marine policy, waives implied warranty of vessel's seaworthiness, and cannot contend that policy was rendered void by breach of such warranty, but may defend suit on policy on ground that loss was caused by unseaworthiness, rather than perils of the sea.

**5. Insurance ☞646(6)—Burden was on insured to prove that tug's loss was caused by peril of sea, though insurer waived implied warranty of seaworthiness by making examination and survey.**

In libel on marine insurance policy, burden was on libelant to prove that loss of insured tug was caused by a peril of the sea, within policy, though insurer waived implied warranty of seaworthiness by making its own examination and survey before issuing policy.

**6. Insurance ☞415—Ship must be seaworthy, though less able to withstand sea perils than another such ship, there being no degrees of sea perils corresponding to degrees of seaworthiness.**

While one ship may be considered a better risk and better able to withstand even perils of the sea than another, both must be seaworthy; there being no degrees of perils of the sea corresponding to degrees of seaworthiness.

*Rehearing denied July 18, 1927.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Louis H. Burns, Judge.

Libel in personam by the Compania de Navegacion, Interior, S. A., against the Fireman's Fund Insurance Company. Decree for libelant, and defendant appeals. Reversed and remanded, with directions.

For opinion below, see 14 F.(2d) 196.

Henry P. Dart, Jr., of New Orleans, La., Robert H. Kelley, of Houston, Tex., and T. Catesby Jones, of New York City (Dart & Dart, of New Orleans, La., Andrews, Streetman, Logue & Mobley, of Houston, Tex., and Bigham, Englar & Jones, of New York City, on the brief), for appellant.

John D. Grace, M. A. Grace, and Edwin H. Grace, all of New Orleans, La., for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. Appellee brought a libel in personam on a policy of marine insurance issued by appellant. The policy insured to the extent of $10,000 appellee's steam tug Wash Gray against loss by perils of the sea. It expressly excepted claims arising from unseaworthiness. The suit was defended on the grounds, among others, that the loss, which was admitted, was not caused by a peril of the sea, but either by unseaworthiness or by negligent towing. The Wash Gray had a length of 87 feet, beam 19 feet, depth 9 feet, and a tonnage of 105.25 gross tons. She had been engaged in river service near Tampico, Mexico. In May, 1922, appellee, her owner, being desirous of sending her to Galveston, to be overhauled and repaired, made application for marine insurance in the sum of $85,000, covering a voyage in tow in the Gulf of Mexico from Tampico to Galveston, a distance of about 420 miles.

Representatives of several underwriters made their own examination, and, after their recommendations had been complied with, accepted the report of two marine surveyors to the effect that the tug appeared to be seaworthy and capable of withstanding a trip in tow to Galveston, and issued separate policies for varying amounts that in the aggregate made up the total amount of insurance applied for by appellee. The policies required the Wash Gray to be manned by a master and crew for emergency and to keep up steam in her pumps, and provided that the towing should be done by the steamer Freeport Sulphur No. 1 as far as Freeport, Tex., and by an approved tug from Freeport to Galveston. The Freeport Sulphur No. 1 was 309 feet in length, with a beam of 45 feet, gross tonnage of 2,588.66, and displacement of about 3,000 tons. She left Tampico on a regular trip for Freeport at 6 p. m. on June 6, 1922, with the Wash Gray, manned as required, in tow. At the beginning of the voyage, the weather was clear, with a light easterly breeze, and the sea was smooth. These conditions of weather and sea continued unchanged, except that by next morning the weather was partly cloudy, until the afternoon of the 7th, when there were frequent showers, accompanied by puffs of wind, and a small swell.

By 8 o'clock that night a moderate northeast breeze was blowing against the current, and as a consequence the sea became choppy. A speed of 9 miles an hour had been maintained from the beginning of the voyage, and the strong current increased that rate of speed through the water in the choppy sea to 10½ miles an hour. As soon as the Wash Gray encountered the choppy sea, she began to roll and pitch; but she gave no signal of distress until 11:30 p. m., or 3½ hours later. In the meantime speed was not slackened, and the rolling and pitching continued. At 10 p. m. it was discovered that the towing bitts of the Wash Gray were working loose, and that she had shipped considerable water. An attempt was made to pull the bitts back in place by a Spanish windlass; but by 11:30 p. m. enough seawater had entered through her seams to force her down by the head, and then a signal of distress was given and the hawser was cut. The Freeport Sulphur No. 1 came alongside and remained until daylight, and then, after unsuccessful efforts to pump the water out, proceeded to tow at slow speed until 11:12 on the morning of the 8th, at which time the tug sank and became a total loss.

There was some dispute as to the length of the hawser, but the weight of the evidence seems to support the conclusion of the District Judge that it was approximately 300 feet long. The conditions of wind and sea encountered were not unusual or different from those which reasonably were to be foreseen as ordinary incidents of the trip. At no time during the voyage did the wind exceed 25 miles an hour, or were the waves higher than 4 or 5 feet from trough to crest.

The District Judge accompanied a decree for appellee with a written opinion, in which he cited with approval the case of Klein v.

Globe & Rutgers Fire Ins. Co. (C. C. A.) 2 F.(2d) 137, and stated that in his view "the implied warranty of the contract was that the Wash Gray was a seaworthy inland water vessel, and was able to withstand all ordinary perils of navigation upon such water, and the perils of the sea against which it was insured were such perils as would be extraordinary to a boat of its size and type." On the facts he found that the loss was caused by the conditions of the weather and sea, and that these conditions were extraordinary for appellee's tug. He rejected appellant's contention that negligent towing was the cause of loss, saying: "Both the towing ship, its officers and crew, and the crew of the little tug, omitted nothing that good seamanship, skill, and prudence would dictate."

[1] In our view it is immaterial whether the loss of appellee's tug was attributable to negligent towing or to the choppy sea, and we accept the trial court's finding of fact that that loss was caused by the conditions of the weather and sea. Even so, in our opinion the loss was not caused by a peril of the sea, which was the risk insured against by the policy sued on. The conditions encountered at sea were not extraordinary or unusual, but were the ordinary, usual, and natural conditions that were to be expected. They were therefore not perils of the sea. Arnould on Marine Insurance, § 812; MacLachlan on Marine Shipping (5th Ed.) 610; Carver on Carriage of Goods by Sea, § 86.

[2, 3] In the Reeside, 20 Fed. Cas. page 458, No. 11,657, Mr. Justice Story said that the phrase "danger of the seas" must "be clearly understood to include only such losses as are of an extraordinary nature, or arise from some irresistible force, or some overwhelming power, which cannot be guarded against by the ordinary exertions of human skill and prudence." In Garrison v. Memphis Insurance Co., 19 How. 312, 15 L. Ed. 656, the Supreme Court cited that case with approval, and said: "These words [perils of the river] include risks arising from natural accidents peculiar to the river, which do not happen by the intervention of man, nor are to be prevented by human prudence, and have been extended to comprehend losses arising from some irresistible force or overwhelming power, which no ordinary skill could anticipate or evade." In view of the just-quoted authoritative and universally accepted definitions, we are of opinion that the phrase "perils of the sea" does not vary in meaning according to the size or type of vessel. The owner of a vessel impliedly warrants its seaworthiness. Any vessel, whatever its size or type, to be seaworthy, must be able to withstand the ordinary perils of a voyage at sea. Arnould, § 686. A vessel is unseaworthy that does not measure up to this minimum requirement.

[4, 5] Assuming the correctness of the trial court's finding of facts in favor of appellee, the Wash Gray was lost because it was not staunch enough to withstand the ordinary action of the wind and waves; in short, because it was unseaworthy. As the policy of insurance expressly excepted the risk of unseaworthiness, there can be no recovery on that ground. Appellant made its own examination and survey, and thereby waived the implied warranty of seaworthiness. It could not thereafter contend that the policy was rendered void by reason of a breach of the warranty; but it still was entitled to defend a suit as to the cause of loss, and the burden still remained on appellee to prove that the loss was caused by a peril of the sea. New Orleans, etc., Ry. Co. v. Union Marine Insurance Co. (C. C. A.) 286 F. 32.

[6] There are degrees of seaworthiness, and sometimes the rates of premium are varied by the underwriters, "according to the different estimate they form of the character and qualities of the vessels to which they relate." Orient Mut. Insurance Co. v. Wright, 23 How. 401, 16 L. Ed. 524. It is argued from this that there are corresponding degrees of perils of the sea. It is, of course, true that a given ship, applying for insurance, may be considered a better risk, and better able to withstand even perils of the sea, than another seaworthy ship. But that fact does not preclude the idea that both ships must be seaworthy.

Appellant also cites Joyce on Insurance, § 2159, which, however, goes no further than to state that recovery cannot be defeated on the ground of the implied warranty of seaworthiness for a sea voyage, where the insurer, before assuming the risk, knows the character and construction of the insured vessel. The case of Klein v. Globe & Rutgers Ins. Co., supra, relied on by the District Judge in his opinion, and by appellee here, seems to sustain the position that what constitutes a peril of the sea is to be determined by the size or type of the insured vessel. Unless that case is distinguishable from this one by a difference in the risks insured against, by the probability that the loss of the vessel there insured was caused by striking a log in the river, or by the fact that the language relied on was used in connec-

tion with the extent of the implied warranty of seaworthiness; then that case does sustain the decree of the District Court. It is true, nevertheless, that the language in that case that is relied on was employed in discussing the effect that should be given to the implied warranty of seaworthiness, and that it was held that the evidence strongly tended to show that the loss was due to a peril of the river and not to unseaworthiness.

Appellee also relies on Farmers' Feed Co. v. Insurance Co., 162 F. 379, decided by the District Court for the Southern District of New York, and affirmed by the Circuit Court of Appeals in 166 F. 111, and on Thebaud v. Great Western Insurance Co., 155 N. Y. 516, 50 N. E. 284. Recovery was allowed in each of those cases on the actual contract, which was held to be different from the contract evidenced by the insurance policy. It was merely held that effect should be given to the actual contract. The facts in this case do not warrant the conclusion that appellant bound itself by its conduct, or by any agreement, to accept the risk of unseaworthiness.

The decree of the District Court is reversed, and the cause remanded, with directions to dismiss the libel.