THE ORIENT MUTUAL INSURANCE COMPANY, PLAINTIFF IN ERROR, *v.* JOHN S. WRIGHT, USE OF MAXWELL, WRIGHT, & COMPANY.

An open or running policy of insurance upon " coffee laden or to be laden on board the good vessel or vessels from Rio Janeiro to any port in the United States, to add an additional premium if by vessels lower than A 2, or by foreign vessels," contained also the following clause, viz : "Having been paid the consideration for this insurance by the assured or his assigns, at and after the rate of one and one-half per cent., the premiums on risks to be fixed at the time of endorsement, and such clauses to apply as the company may insert, as the risks are successively reported."

This is different from an ordinary running policy, in which the rate of premium to be paid is ascertained and inserted in the body of the policy at its execution, and in which species of policy the contract becomes complete, and the policy attaches upon the goods from the time they are laden on board the vessel, as soon as the ship is declared or reported, provided the shipment comes within the description in the policy.

The rules explained which govern this class of policies.

But in the policy in question there is something more to be done, in order to make the contract complete, than merely to declare the ship. The assured must pay or secure the additional premium, which the underwriter has reserved the right to fix at the time of the declaration of the risk in case the vessel rates lower than A 2.

Unless the assured paid or secured this additional premium fixed by the underwriter, the contract of insurance, in respect to the particular shipment, did not become complete or binding.

Hence, the instruction of the court below was erroneous, which held that the contract was complete and binding as soon as the vessel was reported; and that, if the parties could not agree as to the additional premium, the question was one for the courts to settle.

The parties stipulated that the additional premium should be fixed when the risk was made known.

The cases upon this point cited.

THIS case was brought up by writ of error from the Circuit Court of the United States for the district of Maryland.

The facts are stated in the opinion of the court.

It was argued by *Mr. Hamilton* and *Mr. Cutting* for the plaintiff in error, and by *Mr. Brent* and *Mr. May* for the defendant.

The arguments chiefly turned upon the point when under this policy the risk commenced. The counsel for the plaintiff in error contended, that it did not attach until the assured paid such premium as should be in good faith named by the insurer as an adequate compensation for the risk to be assumed. The counsel for the defendant in error contended, that the contract was irrevocable the moment the premium and extension was reported and approved.

1 Parsons Contracts, 406, 407, note K.

Tayloe *v.* Merchants' Insurance Company, 9 How., 390.

The contract is not the less complete, because an increased premium was left open for subsequent agreement. This was decided in United States *v.* Wilkins, 6 Wheat., 135, and not overruled, as supposed, in 17 Ohio, 192.

But here is an express obligation to pay an increased premium, and that is itself as good as if the increased premium had been paid at the time—promise for promise is a good consideration.

1 Parsons Contracts, 373—376.

19 Howard, 323.

Mr. Justice NELSON delivered the opinion of the court

This is a writ of error to the Circuit Court of the United States for the district of Maryland.

The suit was brought by the plaintiff below upon a policy of insurance covering a quantity of coffee laden or to be laden on board the "good vessel or vessels" from Rio de Janeiro to any port in the United States, "*to add an additional premium, if by vessels lower than A 2, or by foreign vessels.*"

The policy contained the following clause in respect to pre-

miums: "Having been paid the consideration for this insu
rance by the assured, or his assigns, at and after the rate of
one and one-half per cent., the *premiums on risks to be fixed at
the time of endorsement, and such clauses to apply as the company
may insert, as the risks are successively reported.*" The policy
bears date 27th July, 1855. The company subscribed at the
execution $22,500 as the amount insured.

On the 30th July, 1855, the policy was altered by agreement
of parties by striking out the words, "vessels not rating lower
than A 2," as it originally stood, and inserting the words now
in the instrument, namely, "an additional premium, if by
vessels lower than A 2, or by foreign vessels."

On the 4th January, 1856, the company subscribed an ad-
ditional sum of $15,000, and on the 19th April following the
sum of $25,000.

Premium notes were given at the time the different sums
were subscribed, at the rate of premium mentioned in the
body of the policy.

The agent of the company at Baltimore, who negotiated
this insurance, the defendants being a New York company,
states that when applications are made to enter risks on run-
ning policies, they are endorsed at once by him, and the report
of such endorsement transmitted to the company in New
York; which names the premium, and this is communicated
to the assured; that the premiums specified in the body of
the policies are nominal, and the true premiums to be charged
are fixed by increasing or reducing the nominal premiums,
when the risks are reported; and that the nominal premiums
taken on the delivery of a running policy are returned, if no
risks are reported.

In the latter part of August, 1856, the plaintiff applied to
the agent at Baltimore for an endorsement on the policy of
the coffee in question, laden or to be laden on board a vessel
called the Mary W., from Rio de Janeiro to New Orleans,
which application was communicated to the company, in order
that they might fix the premium. The company at first de-
clined to acknowledge the vessel as coming within the descrip-
tion in the policy, on account of her alleged inferior character.

and unfitness for the voyage; but the plaintiff insisting upon the seaworthiness of the vessel, and his right to the insurance within the terms of the policy, the company fixed the premium at ten per cent., subject to the conditions of the policy, or two and one-half per cent., as against a total loss. This rate of premium the plaintiff refused to pay.

The coffee was shipped on the Mary W. at Rio de Janeiro for New Orleans, on the 12th July, 1856, at which period she started on her voyage, and was lost on the 29th of the month upon rocks, the master being some seventy miles out of his reckoning at the time.

Evidence was given on the trial, on the part of the company, tending to prove that the Mary W. was rated below A 2, and even that she was unfit for a sea voyage, being originally intended, when built, in 1846, as a coasting vessel, and prayed the court to instruct the jury, that if they find from the evidence the vessel, at the time of the application for the endorsement of her cargo upon the policy, was rated in the office of the company and other offices of underwriters in New York lower than A 2, and being so rated, the company offered to make the endorsement at the premium fixed by them, and that on the premium being communicated to the plaintiff, he refused to pay it or assent thereto, then he is not entitled to recover, which prayer was refused; and the court thereupon instructed the jury, substantially, that the plaintiff was entitled to recover for the loss, so far as the rate of premium was concerned, upon deducting such additional premium to the one and one-half per cent., as in the opinion of underwriters may be deemed adequate to the increased risk of the coffee shipped in a vessel rating below A 2.

The jury rendered a verdict for the plaintiff.

The material question presented in the case is, whether or not the company were under a contract, within any of the terms and conditions of the policy, to insure this particular cargo of coffee on board of the vessel Mary W. at the time the loss occurred; for, unless the contract is found there, none existed between the parties, as it is admitted none was entered into at the time the vessel was reported and the risk declared.

The plaintiff has assumed the affirmative of this question, and insists that the company was bound by the terms of the policy to cover the coffee from the time it was laden on board the vessel at Rio as soon as the risk was declared, and this whether the vessel rated below A 2 or not.    This is necessarily the result of the position claimed, as it denies to the company the right to fix an additional premium, even if it should happen that the vessel rated below A 2; that then, or in that event, it is contended, the additional premium becomes a question of mutual adjustment between the parties, and if they disagree, to be determined by the courts.    On the part of the company, it is insisted that, according to the special provisions in the policy, in case the vessel reported rates below A 2, the contract is inchoate and incomplete until the payment or security by the assured of the additional premium to be fixed at the time by the company.

The contract of insurance in this case arises out of an open or running policy, which enables the merchant to insure his goods shipped at a distant port when it is impossible for him to be advised of the particular ship upon which the goods are laden, and therefore cannot name it in the policy.

A relaxation in this respect has been permitted by the laws and practice of commercial countries; and the party effecting the insurance is allowed to insure the cargo "on board ship or ships," on condition of declaring the ship upon the policy and giving notice to the underwriter as soon as known, and if possible before the loss on board of which the goods have been laden.    The underwriter, who consents to insure upon policies of this description, of course, has no opportunity to inquire into the character or condition of the vessel, and agrees that the policy shall attach, if she be seaworthy, however low may be her relative capacity to perform the voyage; and for the additional risks he may thus incur, he finds his compensation in an increase of the premium.    A higher premium is always demanded where the vessels to which the insurance relates are not known.

The ship, indeed, must be seaworthy, or the policy will not attach; but the degrees of seaworthiness or of the capacity of

a ship to perform a given voyage are exceedingly various; and it is well known that the rates of premium are varied by the underwriters according to the different estimate they form of the character and qualities of the vessels to which they relate.

In the case of an insurance of goods shipped from and to port or ports designated, or on a voyage particularly specified, the ship to be afterwards declared, and the rate of premium to be paid is ascertained, and inserted in the body of the policy at its execution, the contract becomes complete, and the policy attaches upon the goods from the time they are laden on board the vessel, as soon as the ship is declared or reported, provided the shipment comes within the description in the policy. But until the declaration is made by the assured, it is inchoate and incomplete; and, if not made at all, the risk is regarded as not having commenced, and the assured is entitled to a return of his premium.

The principles of law and rules of construction governing policies of this description appear to be well settled, as may be seen by a reference to the authorities collected in the text-writers. (1 Arnould, ch. 7, sec. 2, pp. 174—179, Perkins's ed.; 1 Phillips, ch. 5, sec. 2, pp. 174—177; 2 Parsons, ch. 1, sec. 2 pp. 34, 35, and ch. 6, pp. 198, 199; 3 Kent's C., p. 256; Hurlst. and Normand R., 2 Exch., p. 549; Entwisle *v.* Ellis, 1857; 4 Taunton, 329; Langhorn *v.* Cologan, 6 Gray, 214; E. Carver Co. *v.* Manf. Ins. Co.)

But the policy before us is materially different from the class of open or running policies adopted in England and upon the continent at an early day, and which appear to be generally if not universally in use at the present time. Instead of determining the amount of premium, and inserting it in the policy at the time of its execution upon the shipments to be afterwards declared, as in the case of the policies we have been considering, the parties here agree, that in respect to a certain class of vessels, namely, those rating lower than A 2, the premiums on the risks shall be fixed at the time they are declared, or reported; when thus fixed, and the premium paid or secured, the policy attaches upon the goods from the time they are laden on board the vessel. The mere declaration of the

ship on board of which the goods are laden is not sufficient to complete the contract, as something more is to be done by the assured to bring the subject within the special stipulations in the policy: he must pay or secure the additional premium which the underwriter has reserved the right to fix, at the time of the declaration of the risk.

The premiums specified in the body of the policy are nominal; and the true premiums to be charged are fixed by increasing or reducing the nominal premiums when the risks are reported. This, it was proved, was the established custom of this company, and of which the assured is chargeable with notice. Indeed, this custom appears to have been acted upon in connection with this policy, and with the dealings of the parties under it.

On the 13th August is endorsed on it: Brig Windward, from Rio de Janeiro to Baltimore—value of shipment $4,750, at $1\frac{1}{4}$ per cent. premium; and on the 20th November: Brig T. Walters, from same place to Philadelphia—value of shipment $2,375, at $1\frac{1}{4}$ per cent. premium. The premiums for insurance of these two shipments are $\frac{1}{4}$ per cent. less than the rate in the body of the policy.

We have said, that where the vessels to which the insurance relates are not known to the underwriter, a higher premium is always demanded, as he has no opportunity to inquire into the character or capacity of the vessel for the voyage; which information is readily accessible where the ship is known, by reference to the book of the register of vessels kept by the underwriters, in which the name, master, rate, and present condition, are entered.

Now, the change made in this policy, and in others of the class, in the time of fixing the premium, from that of the execution of the policy to the time when the risk is reported, places the underwriters, in respect to fixing the premiums, on the footing of insurance of goods to be shipped on board a vessel named, the underwriters possessing all the information possessed in that case, in respect to the character of the vessel. As the effect, therefore, of this change in the terms of the policy is to reduce the rate of premium, it is as beneficial to

the assured as to the underwriter—which, doubtless, led to his assent to this mode of insurance. It is true, that in respect to vessels to be afterwards declared, and the premiums on the risks to be fixed at the time declared or reported, the parties stand on the footing of original contractors, the underwriter having the right to fix the premium, and the applicant the right to assent or not, as he sees fit; and, undoubtedly, mutual confidence must exist, in order to the successful working of the system. On the one side, the underwriter might be unreasonable in the amount of the premium claimed; and on the other, the applicant, who is presumed to have the earliest advices of the ship on which his goods are laden, might conceal her condition when reported, and impose upon the underwriter. Injustice might be practiced in this way by both parties, if this mode of dealing with each other may be assumed.

But this would hardly be just as to either party, and especially when the interest of both is concerned to deal justly and honorably with each other. The business of the underwriter depends essentially upon the good faith with which he deals with his customers; and this motive, as well as the great competition that exists in the business, may be well relied on to prevent any unreasonable advantage. But, at worst, the applicant is not bound to pay the premium, if unreasonable: and may at once be insured in any other office, and claim a return of premium, if any, advanced. The evidence in the present case furnishes no ground for apprehension, as the premium charged was not unreasonable, but the contrary.

But, be the argument ever so strong in respect to the opportunities to deal unjustly with each other, it is quite clear, upon the fair if not necessary construction of the terms of the policy, both parties have agreed to submit to them, for the sake of the better means furnished to ascertain the true character of the risks, and thus reduce the rate of premium below that which was charged under the old system, where it was fixed in the absence of knowledge on the subject; and the period of time these policies with this change of the terms has been in use, for aught that appears, without complaint or dis-

satisfaction, affords evidence that all apprehensions of unfair dealing are imaginary.

We have said that, according to the true construction of the terms of this policy, where the vessel declared or reported by the assured was rated below A 2, the company had reserved the right to fix at the time the additional premium; and unless assented to by the assured, and the premium paid or secured, the contract of insurance, in respect to the particular shipment, did not become complete or binding. The court below held the contrary, the instruction to the jury maintaining that the contract was complete and binding as soon as the vessel was reported; and that, if the parties could not agree as to the additional premium, the question was one for the courts to settle; thus placing this policy upon the footing of those where the full premium was fixed, and paid or secured, at the time of the execution, and in which no special provisions concerning the premium are inserted.

These special clauses are very explicit, and are inserted in this policy for the benefit of the company. We think, independently of the usage and practice of the company under these policies, the import of the language used cannot well be mistaken.

The right is expressly reserved to charge an additional premium upon all vessels reported rating below A 2; and, again, the premiums on risks are to be fixed at the time of endorsement—that is, when the vessels are reported to be noted on the policy. If the construction rested alone upon the right to add additional premiums upon a given rate of vessels, there might be some ground for the argument that the time for fixing them was open; and if the parties could not agree, the law must determine the question. But when the parties themselves stipulated, not only that in the particular case additional premium shall be charged, but that it shall be fixed at the time the risk is made known, there would seem to be no room for doubt or dispute in the matter. In the present case, there is also the additional special provision, namely, "and such clauses to apply as the company may insert as the risks are successively reported," thus providing for any un-

foreseen or extraordinay risks that might be claimed under the policy.

Even if an arbitrator had been agreed upon to fix the additional premium, and he had refused, the contract would have been at an end, as the courts could not appoint one. (3 Mer. R., p. 507, Wilks *v.* Davis; 14 Ves., 400, Milner *v.* Geary; Code Napoleon, 1591, 1592; 1 Troplong de vente, nos. 146, 160;) and certainly they could not fix the premium in this case, on the disagreement of the parties, without assuming the right to make a contract for them. The premiums were to be settled when the risks were reported, not at any other period.

In the case of policies on goods "in ship or ships," to be afterwards declared, and where the full premium is paid or secured at the execution, the policy, even in that case, is a mere outline of the contract, to be completed on making the declaration; but if not made within the terms of the policy, the contract is at an end as respects the particular shipment.

In Entwisle *v.* Ellis, (2 Hurlst. and Norm., Exch. R. P., 549, 556, 1857,) Channell, B., observed, speaking of a policy of this description, at the time of the making of the policy, certain particulars were agreed upon—others were left to be settled. The policy was to be on rice, to be warranted free from particular average, to be sent "in ship or ships." Something more was wanting to make a binding contract. The parties can only fill up such particulars as are left in blank so as to be consistent with the policy.

Applying this principle to the policy in the present case regarding the special clauses therein, something more is required to make a binding contract than the declaration of a ship rating lower than A 2 to bring the subject within the policy; the additional premium fixed by the company was to be paid or secured.

We have found very few cases in the books upon the peculiar class of policies before us, and no mention of them in the text-writers on the subject of insurance. The case bearing more directly than any other upon the point in question is Dounville *v.* the Sun Insurance Company. (12 Louis. Ann. R. P., 259.)

The contract of insurance there was in an open or running policy of the class in which the full premium was paid or secured at the execution.   But a modificat·on was afterwards made, by which " it was agreed that this policy shall cover merchandise to the address of the assured from European ports to New Orleans, *via* Boston ·or New York, *subject to additional premium as per tariff.*"

The court held that by the terms of the policy, the party desiring to be insured upon any particular shipment of merchandise was bound to present ·to the company an invoice of the goods, (this had been provided for in the policy,) and pay or secure the premium; that the party was not bound to report any ·shipment except at his election, nor· could the company demand premium on the same, unless presented for insurance; and that, on a policy of the class before the court, there must necessarily exist as many contracts of insurance as there are endorsements on the policy of separate shipments.

We have examined this case more at large, from the novelty of the questions involved, as they do not seem to have been the subject of consideration by the courts or text-writers, than from any difficulty we have felt in the view to be taken of them; and from the examination we have given· to the peculiar features of the policy, we entertain no doubt but that the changes made, and which have been particularly referred to, will be found in practice beneficial both to the insured and insurer.

The only defect, perhaps, existing, is the want of a provision for the case, which may happen, where the declaration or report of the ship is not made until the loss is known— that is, where the ship and the loss are reported together. According to the old form of the policy, the full premium being ascertained and fixed at the date of it, it is well settled that, though the declaration is not made till the loss is known, if made with due diligence after advices of the ship, the underwriter is ·liable.   There may be some difficulty in applying that rule to the class of policies before us.   It was rejected in the case of·Dounville *v.* the Sun Insurance Company, above referred to.

Upon the whole, after the best consideration we have been able to give to the case, we are satisfied the ruling of the court below was erroneous, and the judgment must be reversed, and a *venire de novo*.

Mr. Justice CLIFFORD dissented. For his dissenting opinion, see the succeeding case of the Sun Mutual Insurance Company against Wright—a case similar to the present one.