EAGLE STAR INSURANCE COMPANY, LTD., Respondent, *v.* INTERNATIONAL PROTEINS CORPORATION et al., Appellants.

First Department, November 7, 1974.

*Herbert Rand* of counsel (*Albert N. Proujansky* with him on the brief; *Kane, Kessler, Proujansky, Preiss & Permutt, P. C.,* attorneys), for appellants.

*Vincent J. Ryan* of counsel (*J. Edwin Carey* with him on the brief; *Hill, Rivkins, Carey, Loesberg & O'Brien,* attorneys), for respondent.

MURPHY, J. The instant action, predicated on a contract of marine insurance, involves application of English and general admiralty or maritime law to an essentially undisputed factual situation.

Prior to May 19, 1965, defendants International Proteins Corporation (a domestic corporation) and its wholly-owned subsidiary Animal Feeds International Corporation (a Panamanian company) requested their insurance broker to procure a policy of marine insurance on their behalf against the risk of loss on shipments of fishmeal from certain specified South American countries. The broker obtained such coverage through its London correspondent from Hogg, Robinson & Capel-Cure, Ltd. ("Hogg"), another English concern, which was then the holder of a master open declaration policy issued by plaintiff and thereby authorized to extend such insurance to defendants by attachment to the master policy. By instrument dated May 19, 1965, Hogg issued its contract of marine insurance, for the account of defendants, certifying that insurance had been effected "attaching for all shipments with first Bills of Lading dated on or after 17th May, 1965". Prior to commencement of suit no copies of the policies were furnished to defendants by plaintiff.

Each master policy in effect during the pertinent periods herein was denominated a "declaration policy to take all declarations attaching"; and the contract issued by Hogg stated that it was an "open contract * * * always open to take all shipments up to U. S. $500,000 any one vessel". Hogg's open cover also provided for specified preshipment conditions with respect to certain cargoes and that "where the vessel has been reported as a casualty prior to time of advice, then insurance shall be free of claim for accident reported."

Neither plaintiff's master policy nor Hogg's open cover expressly required the declaration of any shipment; although a form of condition binding defendants to declare each and every shipment was available.

The gravamen of the complaint is that defendants breached their insurance contract by failing to declare and pay premiums in respect of all shipments made by them during the period of coverage. Damages in excess of $1,000,000 are sought; plus an accounting. Defendants interposed an answer containing, *inter alia*, counterclaims, which are not presently before us.

After joinder of issue, defendants moved for summary judgment dismissing the complaint, on the theory that, under governing English law, no action for premiums can be maintained by the insurer against the insured under the circumstances of this case. According to defendants, plaintiff's only action for unpaid premiums lies against the procuring broker who, in turn, has a cause of action against the assured. Plaintiff, no longer seriously disputing the above, countered by contending that its causes of action were not for unpaid premiums but for breach of contract to declare all shipments. Special Term found substance to the distinction, declined to deal with " the merits of the dispute " allegedly raised for the first time in the reply affidavits on the motion below and denied the motion in view of its reluctance " to grant a judgment which could effectively enrich the defendants unjustly." After searching the entire record before us, we conclude that defendants' motion should have been granted.

Contracts of insurance have been referred to as " Contracts of Adhesion " in view of the disadvantageous bargaining position which generally exists between the parties and, under such circumstances, are narrowly construed against the insurer (4 Williston, Contracts [3d ed.], § 626, pp. 855–857). And although our Court of Appeals has held that " a contract for insurance is no different than any other contract " (*Drilling* v. *New York Life Ins. Co.*, 234 N. Y. 234, 241), it has also recognized " the tendency on the part of courts to treat insurance contracts as standing in a class by themselves " (*Satz* v. *Massachusetts Bonding & Ins. Co.*, 243 N. Y. 385, 393; see, also Schultz, Special Nature of The Insurance Contract: A Few Suggestions For Further Study, 15 Law & Contemp. Prob. 376).

A contract of adhesion such as the marine insurance policy involved herein is prepared and executed by the insurer, but is not signed by the assured who merely " adheres " to the formal document and is bound by its terms. The obligations of the assured are only conditions precedent or promissory warranties, the breach of which may vitiate the policy, but do not give rise to a claim for additional premiums or for breach of contract. (*Atlantic Fruit Co.* v. *Hamilton Fire Ins. Co.*,

251 N. Y. 98.) Accordingly, whether or not there was an obligation to declare all shipments, the complaint fails to state a cause of action under either theory proffered below.

Moreover, our examination of the documents in issue convinces us that defendants, in any event, were not required to declare all shipments. In such connection, it should be noted that contracts of marine insurance are subject to the laws of admiralty and governed by Federal law which '' uniquely enough refers to the law of England '' since harmonious decisions in this field are deemed highly desirable. (*Compania Maritima Astra, S. A.* v. *Archdale,* 134 N. Y. S. 2d 20, 32.)

The policies before us fall within the classification of open or running policies; and are described as declaration policies. They do not name the vessel, nor identify the voyage, nor the ports of destination, nor fix the value of any specified cargo, nor do they state all of the circumstances material to any risk assumed by the underwriter. They do not specify a maximum sum of coverage other than the limit on the amount of coverage per vessel.

Significantly, no provision in the open cover or in the master policy expressly requires the declaration of any shipment; although, as above noted, an appropriate clause obligating defendants to declare each and every shipment without exception was available. Under the governing legal principles and rules of construction applicable to these types of policies, defendants may selectively insure their shipments and '' until the declaration is made by the assured, it is inchoate and incomplete; and, if not made at all, the risk is regarded as not having commenced ''. (*Orient Mut. Ins. Co.* v. *Wright,* 64 U. S. 401, 406.)

Plaintiff's reliance on language in the open cover disclosing that it '' [attaches] for all shipments with first bills of lading dated on or after 17th May 1965 '' as supporting its contention that all shipments are automatically at risk, is misplaced, since it appears that such phrase merely referred to the cover note (the document which attaches defendants to the master policy) and revealed that the underwriter was not open to take shipments earlier than that date.

In sum, if plaintiff intended to require defendants to declare all shipments, and pay premiums with respect thereto, it should have expressly so stated. We find no such obligation clearly imposed and, under the circumstances here presented, construe the documents in issue in favor of the assureds as the weaker contracting party.

Accordingly, the order of Supreme Court, New York County (STECHER, J.), entered March 25, 1974, denying defendants' motion for summary judgment dismissing the complaint and for a severance of the counterclaims should be reversed, on the law, with costs and disbursements, and said motion granted.

NUNEZ, J. P., STEUER, TILZER and LANE, JJ., concur.

Order, Supreme Court, New York County, entered on March 25, 1974, unanimously reversed, on the law, the motion granted, the complaint dismissed, and the action severed from the counterclaims. Appellants shall recover of respondent $60 costs and disbursements of this appeal.