Harold Hyman, J.
Plaintiff moves for summary judgment on his first cause of action against all of the defendants, *444 namely, Anthony Chiesa, Harry Linzer and Jerry Shore, individually, and as trustees of Park Electrochemical Corp. Employees’ Profit Sharing Trust and P„prk Electrochemical Corporation. Plaintiff seeks to recover judgment in the amount of $15,647.35 which he claims became vested in him on or before February 28, 1973 together with interest thereon from November 30,1973.
The affidavits which supplement and enlarge upon the pleadings, together with the exhibits annexed thereto, present matter from which this court must determine whether or not there are either debatable, arguable or triable issues of fact shown to exist so as to warrant a denial of the motion. For if an issue of fact is shown to exist, the motion must be denied (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395), and where it is shown that an arguable (Barret v Jacobs, 255 NY 520, 522) or legally debatable question of fact exists, the motion must likewise be denied (Horvath v 305 Park Club Lane, 37 AD2d 907; Town of Preble v Song Mountain, 62 Misc 2d 353; Jones v County of Herkimer, 51 Misc 2d 130).
This court is of the opinion that there is neither a factual, arguable nor even debatable issue presented by the documentary proof, admissions, and opposing papers of the defendants "Park”, or the "Trustees” in their representative capacity; and, therefore, that plaintiff is entitled to summary judgment oh his first cause of action, which arises from the following admitted, conceded or undenied facts, and documentary evidence hereinafter discussed, against the above-named defendant, "trustees”.
On February 28, 1958, Park Nameplate Company (Park), desiring to assist its employees in the building of independent resources for retirement purposes (Plan preamble), adopted an employees’ profit-sharing plan for the exclusive benefit of its eligible employees; it was then named "Park Nameplate Company, Inc. Employees’ Profit-Sharing Plan”. This Plan, among many other provisions, defined an "employee” as "any salaried person * * * other than a member of a collective bargaining unit, who is regularly employed by the Company (emphasis supplied), and that "a 'Participant’ is an employee of the Company who is eligible to be and becomes a participant as provided in Article IV herein (Art. II, sec. l[e])”. The Plan, by its own verbiage, became effective as of February 28,1958.
The Plan on the date of its origination (Feb. 28, 1958) further provided in article VI — Benefits—section 3(c): "Any *445 thing herein contained to the contrary notwithstanding, no participant shall receive or be entitled to any rights or benefits conferred by the Company hereunder if he shall be discharged from the service of the Company for dishonesty; disclosing Company or trade secrets; conviction of a crime, or if he shall enter into a business competitive with the Company or become an employee of a business concern competitive with the Company. ” (Emphasis supplied.)
The Plan, at its origin, was by its verbiage, therefore, definitively clear, concise and unequivocal. In fact, defendants, "Trustees” and "Park”, themselves unilaterally and explicitly specified five separate and distinct grounds, each of which was a legitimate basis for denying vested rights to a participating employee. Any one of these grounds would, therefore, per se, constitute a basis upon which the trustees of the Plan could (had the right to) deny an employee his otherwise entitlements under the Plan.
On January 28, 1960, the defendants, "Park” and "trustees”, made and executed their "First Amendment” to the Plan; again unilaterally. Defendants make no showing of any reason therefor, although plaintiff maintains that it was caused by the intervention of or the rules and regulations of the United States Internal Revenue Service in order for the company to benefit taxwise. The reason for defendants amending the Plan is at this juncture of little importance. Suffice it to say that it was done, and that one of its amendments concerned section 3(c) of article VI; and that as to that section, a drastic change was made in that it deleted from the Plan the verbiage: "or become an employee of a business concern competitive with the Company.” (Emphasis supplied.)
The paragraph thereafter read, and now reads, after such deletion: "or if he shall enter into a business competitive with the Company within a period of two years from the date of termination of his employment.” (Emphasis supplied.) It no longer spoke of or mentioned the employee becoming "an employee of a business concern competitive with the Company” but, rather, it limited itself in that regard to an employee "entering] into a business competitive with the Company.”
Both parties agree that defendant, Park, had adopted this Plan and that it is binding upon said defendants.
Defendant, Park, does not deny, and therefore admits, that plaintiff was hired by it as an employee in or about November, *446 1960; approximately 11 months after the "'First Amendment” to the Plan was adopted by defendants.
Defendants likewise admit (by failing to deny the allegation in the complaint) that plaintiff became a member of the Plan on or before February 28, 1961, and that plaintiff’s rights "vested”. Defendants further admit that plaintiff was discharged by defendant "Park” on November 31, 1973, and that the vested value of plaintiff’s account on February 28, 1973 in the Plan was $15,647.35.
Although plaintiff alleges that his discharge was "without cause” defendants merely deny such allegation and rely solely upon the Plan not to aver any ground for the discharge of plaintiff, but rather only to assert the reason defendant "Trustees” refused payment to plaintiff of the fund vested in him by the Plan. In doing so, defendants plead, as an affirmative defense, that, "in or about January, 1974, plaintiff entered into a business competitive with the business of [defendant] Park Electrochemical Corp. by becoming employed by and associated with * * * a competitor of [defendant]”; the fact of the "discharge” itself, or the reason therefor, other than for grounds provided for by the Plan, becomes unimportant.
Since the Plan provides with clearness and definitiveness the only enumerated ground upon which plaintiff could become disqualified from receiving the benefits under the Plan, this court is of the opinion that the burden of alleging and proving one of the specified grounds contained in the Plan, as relied upon, is upon the defendant. Since it is admitted by defendant, Park, that plaintiff was "discharged”, and therefore plaintiff did not voluntarily terminate his employment, any denial of benefits to plaintiff must be restricted solely and only to a cause or causes specified in the "contract of adhesion” unilaterally prepared by defendant.
Defendants have not seen fit to state or set forth any other legal basis for their declination to plaintiff of his benefits; their opposing papers are completely devoid of any fact or legal basis to substantiate declination within the confines of the Plan as amended. Defendants rely solely upon the reason for their declination, that plaintiff became "employed by a competitor” of defendant Park. Defendants maintain that such comes within the proscription of section 3(c) of article VI, the part thereof which reads, "if he shall enter into a business competitive with the Company.” It is defendants’ contention *447 that it was the "intention” of defendants that such clause was also to and intended to mean "employed by a competitor”.
First, as previously pointed out, the clause referring to "employment by a competitor” was deliberately deleted by defendants from the original Plan almost three years prior to plaintiff’s employment. Therefore, the Plan and its verbiage must be strictly construed against its maker, the defendant herein. (Matter of Goldfield Corp. v General Host Corp., 29 NY2d 264; Rentways v O’Neill Milk & Cream Co., 308 NY 342; 10 NY Jur, Contracts, § 223.) This is particularly true as to a "contract of adhesion” (Eagle Star Ins. Co. v International Proteins Corp., 45 AD2d 637).
Secondly, plaintiff had made no new agreement, not even orally, with defendant which would in any way cause a novation or modification of said amended Plan, nor has any oral agreement even been alleged by defendant to have ever been made with plaintiff.
Thirdly, this defendant cannot now be permitted to unilaterally show any such intention by paroi evidence to controvert that which is therein clearly written and which is without any ambiguity. To allow paroi evidence to show such an alleged intention with regard to the contract of adhesion, when it is so clearly and definitively set forth and is without ambiguity as to meaning, particularly in view of its past history and deletion of the very verbiage it now attempts to insert, would violate the Plan itself and would emasculate the paroi evidence rule by making a new and unwarranted exception thereto. This is particularly so where fraud or duress in the inducement is neither pleaded nor alleged and the history of the Plan, as obtained from the primary and amended Plan, bespeaks of any other interpretation than that which is unambiguously set forth.
The Plan is unequivocal, definitive, clear and certainly not ambiguous. It was a "contract of adhesion” used by defendant Park to attract employees to itself; it was a "contract of adhesion”, that is to say, it was an agreement not resulting from freedom of bargaining, but one which gave the employee only the opportunity "to adhere to the contract or reject it” (Hamilton v Stockton Unified School Dist., 245 Cal App 2d 944, 951-952; Neal v State Farm Ins. Co., 188 Cal App 2d 690, 694; Steven v Fidelity & Cas. Co. of N. Y, 58 Cal 2d 862, 882). As stated in Neal v State Farm Ins. Co. (supra, p 695), "A party hired under such a contract lacks the economic strength *448 to secure a change in the language of the document by negotiation, and, therefore, any ambiguity in the instrument should be resolved against the draftsman, and any ambiguous provision should be construed in favor of the party adhering to the instrument. ” (Emphasis supplied.)
In the instant matter the court finds the provision, by its present verbiage and from its past history, unequivocal and definitively not ambiguous. But, even if it were, the question of "intent” is to be considered, and such must nevertheless be resolved against defendants, its draftsmen, and in favor of plaintiff, its mere "adherent”. To do otherwise would result in a travesty of justice. The cases cited by defendants wherein paroi evidence was permitted to be introduced were agreements between parties dealing at "arm’s length”, wherein the writing involved was clearly ambiguous.
It would truly be a travesty of justice to now permit paroi evidence to be introduced to show an intent contrary to that specifically set forth in this "adhesion contract”, and particularly at a time after monetary rights based thereon and payable to the "adherent employee” have long since "vested”. And so, it is found by the court herein in favor of plaintiff, the adherent employee, that there is neither merit to said affirmative defense nor to the denials of defendants with respect to plaintiff’s first cause of action. There is neither a factual issue nor a debatable nor arguable issue shown to exist which would warrant denial of plaintiff’s motion.
Therefore, plaintiff is hereby granted summary judgment on his first cause of action against defendants "Anthony Chiesa, Harry Linzer and Jerry Shore as Trustees of Park Electrochemical Corp. Employees’ Profit Sharing Trust”, in the amount of $15,647.35, with interest thereon from November 30, 1973, together with the taxable costs and disbursements of this action, and the affirmative defense in the answer of all defendants is stricken pursuant to CPLR 3211 (subd [a], par [10]) as being without merit. The (first) cause of action as against said defendant "Trustees” shall be deemed severed from the remaining causes of action herein, and the remaining causes of action are permitted to continue. Summary judgment against defendant "Park” and Anthony Chiesa, Harry Linzer and Jerry Shore, individually, is denied in view of the fact that except for the second and third causes of action wherein there might be personal liability against said individual defendants, there is no "personal” liability which *449 would attach as to them individually in the first cause of action; but, on the other hand, defendants Chiesa, Linzer and Shore are liable in their fiduciary capacities as "Trustees” of the Plan on the first cause of action.
As to plaintiffs motion to amend the complaint, the three causes of action sought to be added by the amended complaint all seek punitive damages. It is argued by defendants in opposition that this portion of plaintiffs motion should be denied because the causes of action are insufficient as a matter of law. Defendants contend that since the actions sought to be added allege false representations which were not aimed at the public generally, plaintiff would not be entitled to exemplary damages.
The cases of Walker v Sheldon (10 NY2d 401) and Vinlis Constr. Co. v Roreck (27 NY2d 687), relied upon by defendants, are distinguishable from the case at bar inasmuch as the actions in the former were solely based on fraud and deceit whereas the actions in the latter are based on the breach by trustees of their fiduciary duties. Moreover, even if the actions sought to be added herein are considered to lie in fraud, the Court of Appeals in Borkowski v Borkowski (39 NY2d 982, 983) stated that "[i]t is not essential * * * that punitive damages be allowed in a fraud case only where the acts had been aimed at the public generally”.
In the instant case the proposed amended pleading has alleged conduct on the part of the trustee defendants of a morally culpable character, actuated by malice. These pleadings are sufficient as a matter of law since, if proved, punitive damages would be allowable.
Leave to amend pleading in the absence of a showing of prejudice should be freely given. (CPLR 3025, subd [b].) Since there has been no showing of prejudice by defendants and the causes of action sought to be added are sufficient as a matter of law, plaintiffs motion to amend the complaint is also granted.