OPINION OF THE COURT
Bernard Klieger, J.
At the outset, the court ordered the consolidation for purposes of trial of the actions brought against Consolidated Edison Company of New York by the named plaintiff and Paula Telni, Solomon Bakalchuck, Roger Ahearn, Alan Ihne, Keith Myers, Fay Willner, Orazio Pellitteri, Robert Taylor, Frank Gallo, Fred Shor and Richard Russel. Others have since been referred to this court for the same purpose.
All of the actions seek recovery for damages suffered as the result of the power blackout which started in New York City and its environs at approximately 9:37 p.m. on July 13, 1977 and continued until sometime on July 14, 1977.
The proof in the Shankman case consisted of a concession of the occurrence and the amount of that plaintiff’s damages. The defendant moved to dismiss on the ground that plaintiff failed to make a prima facie case and that defendant’s rate schedule, filed with and approved by the Public Service Com *151 mission, provides that it would not be liable for damages resulting from ordinary negligence.
The court reserved decision on the defendant’s motion with the stipulation that the motion would be treated as relating to all the other plaintiffs’ cases. If the court decided the motion adversely to the defendant, the other plaintiffs in the consolidated trial would be given the opportunity to produce evidence bearing on their individual damage claims.
In a community in which each citizen’s welfare depends in large degree on continuous electrical service, the occurrence of a power failure is evidence that "there is a defect somewhere. Where and what it is is known only to the experts in the use and management of electricity”. (Texas Power & Light Co. v Bristow, 213 SW 702, 705 [Texas Civ App writ refused].)
The difficulty in the case at bar is that the "experts” who are under the control of the defendant have not come forth to enlighten the court. The court is therefore relegated to those inferences which may be drawn from the occurrence itself.
There are theoretically many causes for the blackout which brought New York City to a standstill the night of July 13, 1977. The possible causes which point to defendant’s negligence are so probable, in view of the circumstances, and those which exonerate defendant are so improbable, that it is unnecessary for a plaintiff to illustrate how the event occurred. The instrumentality being in the exclusive control of defendant, the circumstances call for the application of the doctrine of res ipsa loquitur (Bressler v New York R. T. Corp., 270 NY 409, 413).
"The doctrine [res ipsa loquitur] merely means that certain occurrences contain within themselves a sufficient basis for an inference of negligence, and it does not differ from ordinary cases of circumstantial evidence except in the respect that the facts and circumstances from which the inference of negligence is drawn are immediately attendant on the occurrence.” (Foltis, Inc. v City of New York, 287 NY 108, 116.)
The defendant contends that res ipsa loquitur may lead to the conclusion that a defendant has not exercised reasonable care. Since its tariff schedule provides that it will not be liable for ordinary negligence, defendant claims plaintiff has not made out a prima facie case by reason of the failure to prove gross negligence. Defendant also claims that the limitation on its liability has found approval in many courts of this State, *152 citing Hamilton Employment Serv. v New York Tel. Co. (253 NY 468) and other cases.
Hamilton dealt with an error in a telephone directory, the publication of which the Court of Appeals held was not the primary business of a telephone company. Hence, the court found the company could limit its liability.
Defendant also relies on a decision of the Appellate Term, Second and Eleventh Judicial Districts, Newman v Consolidated Edison Co. (79 Misc 2d 153), which indicates that this defendant’s exemption from liability for ordinary negligence might be based on Hamilton (supra), Matter of Leitner v New York Tel. Co. (277 NY 180) and subdivisions 5 and 12 of section 66 of the Public Service Law. None seems in point.
Matter of Leitner involved the refusal of the New York Telephone Company to reinstate coin box service in two cigar stores. The Public Service Law sections involve the power of the Public Service Commission to investigate and approve rates and forms of contracts. If rules of liability are to be formulated or changed, such formulation or change should derive from pronouncements of the Legislature or Court of Appeals. (Bierman v Consolidated Edison Co. of N. Y, 66 Misc 2d 237.) It does not appear that the right to approve a form of contract, given to the Public Service Commission by the Legislature, has elevated that commission to the status of a Legislature or a court of last resort.
In the one case where the issue might have been resolved, the Appellate Division, Second Department, held in "Wazalen” v Consolidated Edison Co. of N. Y. (43 AD2d 985): "We do not reach the question of whether respondent may limit its liability for loss for simple negligence by filing a provision in its tariff to that effect”.
To the extent that earlier cases (cf. Weld v Postal Tel.-Cable Co., 199 NY 88, and cases cited at p 98) countenance a contractual limitation of liability to gross negligence, they are inapposite. One may choose to utilize the speed of a telegram or cable for business purposes. In that circumstance, part of the price paid may reasonably be a contractual limitation of liability.
No such choice resides with the plaintiffs. They are unable to function in this area without electricity, and for all practical purposes electricity may be obtained only from defendant. The contractual limitation is one of adhesion.
A contract of adhesion does not arise from freedom of *153 bargaining. It is given to one party "to adhere to it or reject it” (Hamilton v Stockton Unified School Dist., 245 Cal App 2d 944, 951-952). There was no opportunity for plaintiff to reject unacceptable conditions, and plaintiff could not obtain electric current, which is a necessity of life in New York, without adhering to defendant’s schedule with its limitation of liability. (Cf. Turski v Chiesa, 89 Misc 2d 443.)
The court has not been persuaded by any precedent that a utility which supplies electricity is liable for damages resulting only from gross or willful negligence. On the contrary, it finds most cogent the reasoning and opinion in Bearden v Lyntegar Elec. Co-op. (454 SW2d 885, 888) where the Court of Civil Appeals of Texas held: "The theory of res ipsa loquitur is based partly on the theory that the defendant has superior knowledge or means of information to determine the cause of the defect. Owen v. Brown, 447 S.W.2d 883 (Tex. 1969); Welliver v. Lone Star Gas Co., 260 S.W.2d 70 (Tex. Civ. App., writ refd). Lyntegar had the control and management of the instruments used to transmit electricity to the plaintiff. The outage was caused by some defect or incident on its lines. Lyntegar is the only party which knows, should know, or has the means of determining the reason for the power outage. Yet Lyntegar failed to introduce any evidence to explain the cause of the outage. Nor did Lyntegar offer any reason for its failure or inability to offer any evidence to rebut the presumption of negligence.”
Res ipsa loquitur rests upon the injustice of requiring an injured party to produce proof of negligence where the circumstances of the occurrence suggest negligence and the instrumentalities are all within the control of a defendant. It would be a gross injustice to require the plaintiff to educe evidence that defendant was negligent in the operation of its vast and complicated network, where control of the network and all available information are peculiarly within the province of the defendant. Injustice may not be nurtured in the halls of justice.
If defendant wishes to avoid liability, it is required to produce evidence of the cause of the blackout, and the court may then determine the issues on the whole case.
The motion is denied and the clerk of this court is directed to schedule this matter for an appropriate trial date after due notice to all parties.