[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 8, 2005
THOMAS K. KAHN
CLERK

_____

No. 03-12484

_____

D.C. Docket No. 96-01798-CV-S-N

WILLIAM CASTLEBERRY,
GLADDEAN CASTLEBERRY,

Plaintiffs,

versus

GOLDOME CREDIT CORPORATION,

Defendant-Cross-
Defendant-Appellant,

DAIWA FINANCE CORPORATION,

Defendant-Cross-
Claimant-Appellee,

DAIWA MORTGAGE ACCEPTANCE
CORPORATION, DAIWA AMERICA
CORPORATION, DAIWA SECURITIES
AMERICA, INC., et al.,

Defendants,

FEDERAL DEPOSIT INSURANCE
CORPORATION, in its individual
corporate capacity and in its capacity

as receiver of Goldome FSB,

Cross-Defendant-
Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____
**(August 8, 2005)**


Before BIRCH, KRAVITCH and GIBSON[*], Circuit Judges.

GIBSON, Circuit Judge.

Goldome Credit Corporation and the FDIC appeal from the district court's order holding them liable to indemnify Daiwa Finance Corporation for its attorneys' fees incurred in defending itself against the claims in Castleberry v. Goldome Credit Corp., No. 96-01798-CV-S-N (M.D. Ala.).[1] Daiwa's indemnity claim against Goldome was based on a loan portfolio sale agreement in which (1) Daiwa bought a portfolio of loans from Goldome and (2) Goldome agreed to indemnify and defend Daiwa against any claim arising out of the origination of loans within the loan portfolio and filed within three years of the sale. The FDIC

_____

*Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit, sitting by designation.

[1]We considered the Castleberrys' appeal arising out of the same litigation in Castleberry v. Goldome Credit Corp., 408 F.3d 773 (11th Cir. 2005).

guaranteed Goldome's indemnity obligation. The district court interpreted the indemnity and guarantee as insurance contracts and held that, because a conflict of interest arose between Goldome and Daiwa, the contracts contained an implied obligation on the part of Goldome to pay for counsel of Daiwa's choosing. The district court entered summary judgment for Daiwa. We hold that the loan portfolio sale agreement is not a contract of insurance and, Goldome having offered to provide a defense, the agreement does not further obligate Goldome or the FDIC to pay for counsel hired by Daiwa. Accordingly, we reverse the judgment of the district court.

The underlying claim in this lawsuit alleged fraud and lending law violations by Goldome in connection with a home mortgage loan to William and Gladdean Castleberry. The suit sought class relief for other similarly situated consumers. The Castleberrys named Daiwa Finance Corp.[2] as a defendant, alleging that Daiwa was a successor in interest to Goldome and that it ratified and joined in Goldome's fraud by taking assignment of the loans it bought from Goldome without disclosing the alleged fraud and lending law violations. Daiwa cross-claimed against Goldome, seeking contractual indemnity for any liability Daiwa might incur to the Castleberrys or any other member of the class, as well as

---

[2]The Castleberrys also named as defendants Daiwa Mortgage Acceptance Corporation, Daiwa Securities America Inc., and Daiwa America Corporation.

3

for attorneys' fees, expenses, and costs Daiwa would incur in defending against the Castleberry suit. Daiwa also joined the FDIC in its capacity as receiver for Goldome's parent corporation and in its corporate capacity, in which the FDIC executed an agreement guaranteeing Goldome's contractual obligation to indemnify Daiwa for claims arising out of the origination of the loans.

On January 29, 1993, Daiwa bought from Goldome a loan portfolio amounting to more than $477 million in face value, which included the Castleberry loan. At the time Daiwa purchased the portfolio, there was already litigation pending alleging that Goldome had perpetrated fraud in connection with the origination of home mortgage loans; Goldome informed Daiwa of such litigation, and, in particular of the Anderson class action. The agreement governing the loan portfolio sale included an undertaking by Goldome to indemnify Daiwa for any suits arising out of the origination of the loans that might be filed against Daiwa within three years of the loan portfolio sale.

The Castleberrys filed suit against Goldome on January 17, 1995 in state court in Alabama. They amended their complaint in April 1995 to add Daiwa as a defendant. On April 27, 1995, Daiwa made demand on Goldome for indemnification and defense of the Castleberrys' claim, and Goldome agreed to defend Daiwa. Goldome retained the law firm of Johnson, Barton, Proctor, Swedlaw and Naff to represent Daiwa in the Castleberry case. Johnson, Barton

4

represented Goldome in that litigation as well. The Johnson, Barton firm wrote Daiwa a letter undertaking to defend it, subject to a reservation of rights in the event Goldome later determined that the claim did not fall within the scope of the indemnification provisions of the loan portfolio sale agreement.

The Castleberrys moved for certification of a class, and Goldome opposed the motion. The state trial court conditionally certified the class, and Goldome moved for reconsideration. Daiwa wrote to the Johnson, Barton firm, seeking assurance that, in the event the class were decertified and former class members filed new suits after the three-year anniversary of the loan portfolio sale (which was the limitations period set out in the sale agreement), Goldome would still indemnify Daiwa. Daiwa pointed out that, unless Goldome were willing to waive the three-year time limit for such suits, it would be in Daiwa's best interests to support class certification; accordingly, there would be a conflict of interest between Goldome and Daiwa that would preclude the same lawyers from representing them both in the Castleberry litigation. Goldome responded that it had no obligation to indemnify Daiwa for any suits filed after the three-year anniversary of the loan portfolio sale. But, in response to the acknowledged conflict of interest, Goldome proposed to substitute new counsel to represent Daiwa "under the control" of Goldome. Daiwa refused to accede to such an arrangement; instead, Daiwa hired its own independent counsel. Daiwa filed a

5

cross-claim against Goldome and a third-party complaint against the FDIC in the Castleberry case for indemnification and attorneys' fees and costs. The FDIC removed the case to the Middle District of Alabama. The federal district court then decertified the class.

The district court entered summary judgment for the defendants against the Castleberrys on May 31, 2001.

On March 29, 2002, the district court took up Daiwa's motion for summary judgment on its cross-claim against Goldome and its third-party complaint against the FDIC. The court held that Daiwa's claim for indemnification was moot in light of the judgment against the Castleberrys, and the court declined to resolve Daiwa's claim for a declaration about any duty of Goldome to defend Daiwa in possible suits brought in the future by former members of the decertified class.

The district court granted summary judgment to Daiwa on its claim against Goldome seeking a declaration that Goldome owed Daiwa a duty to defend it against the Castleberrys' claim; the court reasoned that the Castleberrys' claims fell within the indemnity clause of the loan portfolio sale agreement. The court also granted summary judgment to Daiwa on its claim for the fees and expenses Daiwa incurred in hiring its own counsel to defend it against the Castleberrys. The court reasoned that because "the indemnification provisions of the [loan portfolio sale agreement] serve the same function as an insurance policy in which [Goldome]

6

was the insurer and [Daiwa is] the [insured]," the court should apply the principles of insurance law governing "the duty of an insurance company to defend its insured." Slip op. at 13. The court held that New York law governed both the loan portfolio sale agreement and the guarantee. Under New York law, when an insurer is obliged to defend its insured and a conflict of interest arises between the two, the insured has a right to obtain counsel of its own choice to be paid by the insurer. Slip op. at 21 (quoting Penn Aluminum, Inc. v. Aetna Cas. & Sur. Co., 402 N.Y.S.2d 877, 879 (App. Div. 1978)). Accordingly, the court held that Goldome was obliged to pay for independent counsel to represent Daiwa. Slip op. at 23.

The court further entered judgment in favor of all remaining defendants, including Daiwa, against the Castleberrys. The court retained jurisdiction to decide the amount of the fee award, but certified the entry of summary judgment for immediate appeal under Federal Rule of Civil Procedure 54(b). Slip op. at 28.

On appeal, Goldome argues that the district court erred in applying insurance law to the indemnity provisions of the loan portfolio sale agreement and the guarantee. Goldome argues that if ordinary, non-insurance contract law were applied, Goldome would not have been held liable to pay for counsel hired by Daiwa.

We review the district court's grant of summary judgment de novo. <u>Penalty Kick Mgmt. v. Coca Cola Co.</u>, 318 F.3d 1284, 1290 n.5 (11th Cir. 2003). Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

New York law has a specific rule, developed in insurance cases, governing the way in which an insurer must discharge its duty to defend its insured. New York cases state a well-established rule that where an insurer is obliged to supply the insured with a defense,

> [i]f [a] conflict of interest arises . . . the selection of the attorneys to represent the assureds should be made by them rather than by the insurance company, which should remain liable for the payment of the reasonable value of the services of whatever attorneys the assureds select.

<u>Prashker v. United States Guar. Co.</u>, 1 N.Y.2d 584, 593 (1956); <u>accord</u> <u>Pub. Serv. Mut. Ins. Co. v. Goldfarb</u>, 53 N.Y.2d 392, 401 (1981); <u>69th St. & 2d Ave. Garage Assocs. v. Ticor Title Guar. Co.</u>, 622 N.Y.S.2d 13, 14 (App. Div. 1995). This rule is evidently invoked without study of the language of the particular insurance contract at issue. <u>See, e.g.</u>, <u>Prashker</u>, 1 N.Y.2d at 593; <u>Goldfarb</u>, 53 N.Y.2d at 401.

The rule in question exists within the context of insurance law and reflects the exigencies of insurance situations. "[I]nsurance policies, while contractual in

8

nature, are certainly not ordinary contracts, and should not be interpreted or construed as individually bargained for, fully negotiated agreements, but should be treated as contracts of adhesion between unequal parties."  16 Richard A. Lord, Williston on Contracts § 49.15 at 90 (4th ed. 2000).  Accord Eagle Star Ins. Co. v. Intern'l Proteins Corp., 360 N.Y.S.2d 648, 650 (App. Div. 1974) (contracts of insurance are "adhesion contracts"), aff'd, 346 N.E.2d 249 (N.Y. 1976).  Courts have interpreted insurance contracts according to the rule of contra proferentem, resolving ambiguities against the insurer.  E.g., Sincoff v. Liberty Mut. Fire Ins. Co., 183 N.E.2d 899, 901-02 (N.Y. 1962); Haber v. St. Paul Guardian Ins. Co., 137 F.3d 691, 697-98 (2d Cir. 1998) (New York law); Pan Am. World Airways, Inc. v. Aetna Cas. & Sur. Co., 505 F.2d 989, 999-1000 (2d Cir. 1974) (New York law).  "Most American courts apply a rule of construction that coverages terms are construed broadly and exclusions and limitations of coverage are construed narrowly."  2 Eric Mills Holmes and Mark S. Rhodes, Holmes's Appleman on Insurance § 6.1 at p. 173 (2d ed. 1996).  In particular, an insurer's contractual duty to defend its insured is read broadly.

> The rationale for the application of the traditional rules [of
> interpreting any ambiguity in the policy in favor of finding of
> coverage] is that the insurance policy is generally an adhesion
> contract and therefore the insured has no ability to negotiate for or
> control the wording of the provisions contained therein.  This liberal
> rule of construction is particularly appropriate in determining the

9

insurer's duty to defend the insured from claims potentially within the scope of the policy coverage.

See id. at § 6.5, pp. 213-14.  Thus,

> [a]n insurer's duty to defend is triggered whenever the allegations in a complaint, liberally construed, suggest a reasonable possibility of coverage, or when the insurer has actual knowledge of facts establishing such a reasonable possibility.  An insurer may be relieved of its duty to defend only if it can establish, as a matter of law, that there is no possible factual or legal basis on which it might eventually be obligated to indemnify its insured, or by proving that the allegations fall within a policy exclusion.

Deetjen v. Nationwide Mut. Fire Ins. Co., 754 N.Y.S.2d 366, 368 (App. Div. 2003) (citation omitted).

In contrast, in a non-insurance indemnity case, the rule of construction is just the opposite: a non-insurance indemnity agreement is strictly construed, and a duty to indemnify should not be found "absent manifestation of a 'clear and unmistakable intent' to indemnify."  Commander Oil Corp. v. Advance Food Serv. Equip., 991 F.2d 49, 51 (2d Cir. 1993); accord Tonking v. Port Auth. of N.Y. & N.J., 821 N.E.2d 133, 135 (N.Y. 2004); Hooper Assocs. Ltd. v. AGS Computers, Inc., 548 N.E.2d 903, 905 (N.Y. 1989).

The district court applied insurance law to the loan portfolio sale agreement because it contained an indemnity agreement and insurance agreements are indemnity agreements.  It does not follow, however, that all indemnity agreements

10

are insurance agreements. "While a policy of insurance, other than life or accident insurance, is basically a contract of indemnity, not all contracts of indemnity are insurance contracts; rather, an insurance contract is one type of indemnity contract." 1 Lee R. Russ, Couch on Insurance § 1.7 (3d ed. 2005 update); see Brotherton Constr. Co. v. Patterson-Emerson-Comstock, Inc., 178 A.2d 696, 697 (Pa. 1962).

The concept of an insurance contract is to distribute risk of loss across a large group, in other words, to "socialize" the risk. 1 Holmes's Appleman on Insurance, §§ 1.3-1.4; 16 Williston on Contracts § 49:2. The loan portfolio sale agreement merely shifted the risk from one corporation to another, with no "distribution" scheme; it therefore is not a typical insurance contract.

Moreover, although the loan portfolio sale agreement contains an indemnity provision, it is not primarily an indemnity contract. Rather, it is a sale contract with an indemnity clause covering the event that the instruments sold enmeshed the buyer in litigation. The indemnity clause functioned as an inducement to the buyer to enter into the sale transaction. When assumption of risk is only collateral to a contract that has a principal purpose other than risk shifting, the contract is not a contract of insurance. St. John's Reg'l Health Ctr. v. Am. Cas. Co., 980 F.2d 1222, 1224 (8th Cir. 1992); 1 Couch on Insurance § 1:9.

11

But most to the point, the contract in this case was not a contract of adhesion in which an insurer offered a form contract to a consumer. Goldome submitted the affidavit of Bruce Brown, the FDIC official charged with negotiating the sale of Goldome's assets. Brown testified that Daiwa was one of two firms that submitted final bids for Goldome's assets, the other being Goldman Sachs. Brown stated that he negotiated directly with principals from Daiwa and Goldman Sachs regarding the indemnity provisions. Daiwa was represented by legal counsel in the meetings that led to the sale of the loan portfolio. Brown informed the potential buyers that for the FDIC, one criterion in awarding the bid was that FDIC sought the most favorable indemnity provisions it could obtain. Goldman Sachs offered $5.9 million more than Daiwa offered for the loan portfolio, but Daiwa offered an indemnity clause more favorable to Goldome, with the indemnity period shortened from six years to three years. Daiwa's shortened indemnity period was the determining factor in the FDIC staff's recommendation to the FDIC board of directors to accept the Daiwa bid rather than the Goldman Sachs bid. The indemnity provision was therefore negotiated, not dictated by Goldome or FDIC. This was no adhesion contract.

There is no reason to interpret the loan portfolio sale agreement in favor of Daiwa according to the rule in insurance cases. We should, instead, apply the rule

12

of construction specific to non-insurance indemnity cases, and look for a "clear and unmistakable" intent to indemnify.

The operative language in the Loan Sale Agreement is found in paragraphs 20.2, Scope of Indemnity, and 20.3, Procedures for Obtaining Indemnification; Notice. The relevant part of paragraph 20.2 provides:

> Seller agrees to and shall indemnify and hold harmless Buyer . . . against any and all claims, losses, liabilities, costs, expenses and damages against Buyer . . . which result from any cause of action arising out of any act or omission by any originator of any Loan . . . in connection with the origination of any Loan . . . .

Paragraph 20.3(ii) dealt more specifically with Goldome's duty to provide Daiwa a defense:

> Upon receipt of [buyer's notice of a claim against it], Seller shall assume, at its sole expense, control of the defense of such claim, including, without limitation, the right to designate counsel and to control all negotiations, litigation, arbitration, settlement, compromises and appeals of such claim . . . .

Finally, Paragraph 20.3(iii) discussed the possibility of Daiwa hiring its own counsel:

> Notwithstanding the foregoing, in the event that Buyer retains separate counsel or takes any other action in connection with the defense of a claim that may give rise to an Indemnified Loss, Seller shall not be required to reimburse Buyer for any costs or expenses incurred, including any fees and disbursements of counsel, in connection with the defense of such claim.

13

The terms of the contract explicitly provide that Goldome would have the right to choose the counsel it would provide to Daiwa and that if Daiwa retained separate counsel, Goldome would not have to pay for it. These terms neither state nor imply an exception in case the reason Daiwa chose to retain separate counsel was a conflict of interest. The terms of the contract do not require Goldome to pay for separate counsel hired by Daiwa and provide no reason to think any such obligation might be implicit.

Daiwa argues that Goldome breached the terms of the loan portfolio sale agreement by offering Daiwa a defense subject to a reservation of rights. Daiwa relies on language in paragraph 20.3(ii), that upon receipt of notice of the claim, Goldome shall assume control of the defense of the claim, "provided, however, that Seller shall have advised Buyer that such claim would, if determined adversely, constitute an Indemnified Loss." Daiwa contends that Goldome's right to control the litigation is conditioned on Goldome first agreeing that the claim would be covered under the indemnity agreement. According to Daiwa, this language means that if Goldome does not agree in advance that all claims are covered, Goldome is not entitled to discharge its duty to defend by hiring lawyers, but instead must pay for lawyers hired by Daiwa. This reading does not comport with the agreement, which contemplates that claims could be filed against Daiwa that are only partly indemnifiable. Paragraph 20.4 states that, in the event of an

14

action which might result in both covered and noncovered losses, Goldome should defend as described in paragraph 20.3, but that it should make reasonable efforts to consult with Daiwa in the defense. Thus, the agreement contemplates the possibility that Goldome could defend an action while disputing liability as to some claims. Moreover, paragraph 20.3(iii) states flatly that if Daiwa hires its own lawyers, Goldome will not be obligated to pay them; this paragraph does not depend on Goldome having previously agreed to liability for indemnification of all claims.

Accordingly, we **reverse** the judgment of the district court. We **remand** the case for further proceedings in accordance with this opinion.

——